## Case No. 17,979.

### WOODMAN v. STIMPSON.

[3 Fish. Pat. Cas. 98; Merw. Pat. Inv. 665.][1]

Circuit Court, D. Massachusetts. June, 1866.[2]

CONSTRUCTION OF PATENT — PRIOR INVENTION—
COMBINATION—MACHINE FOR ORNA-
MENTING LEATHER.

1. Patents are to be construed, if possible, so that the inventor shall have the benefit of what he has actually invented.

[Cited in Stover v. Halstead, Case No. 13,509.]

2. To ascertain what the patentee has invented, we look in the first place at the claim.

3. A new combination or arrangement is patentable, although each part, taken by itself, is old.

4. The inventor of a machine has made it for all the uses to which it is applicable, and no one

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. Merw. Pat. Inv. 665, contains only a partial report.]

[2] [Reversed in 10 Wall. (77 U. S.) 117.]

can obtain a second patent for the machine by applying it to a new use.

[Cited in Stow v. Chicago, 104 U. S. 550; McComb v. Brodie, Case No. 8,708.]

5. The second patent, if good, must be for the improvement in the art in which the new application is made.

6. The true test of invention is not whether an ordinary mechanic can make the combination, if it is suggested, but whether he would make the combination without suggestion, by means of his ordinary knowledge.

7. The date of invention is the time when the patentee conceives the idea of doing the thing in substantially the way in which he patents it.

8. Prior machines relied upon to defeat a subsequent patent must have been working machines, which have either done work or been capable of doing it. They must not be mere experiments, afterward abandoned.

9. If a previous patent so far describes a machine covered by a subsequent patent that any mechanic of ordinary skill could, from the description in the first patent, construct or supply all the essential parts of the mechanism described in the second patent, the latter is void.

10. The value of an event, by which as aid to recollection, a witness attempts to fix the date of the use of a prior machine, depends, first, on the importance of the event itself, and next, on the closeness of its connection or association with the fact which is sought to be proved.

11. The patent of Woodman, dated March 29, 1864, for "improved machine for ornamenting leather," is not for "a pebbling roller, however it may be used," but for a combination of the short revolving roller with a figure engraved or sunk on its periphery, a radial arm to give pressure, and springs to equalize the pressure, moving over the table in such a manner that the rollers shall be properly pressed upon the leather and move over it in substantially the same line at each operation of the machine.

12. In considering whether one element of a combination is substantially the same as an element of another combination, the fact that one works better than the other, coupled with the fact that the change is not within the ordinary knowledge and skill of all mechanics, is highly important and often decisive.

This was an action on the case [by Charles T. Woodman against James C. Stimpson] tried by LOWELL, District Judge, and a jury, which was brought to recover damages for the infringement of letters patent for an "improved machine for ornamenting leather," granted to Charles T. Woodman, March 29, 1864. The invention consisted in producing a pebbled or boarded grain or finish upon leather, by subjecting it to the pressure of a short revolving cylinder or roller of steel or other metal, having the required design or figure engraved upon its periphery, and rolling over a table supported by springs on its under side, and so arranged as to be raised or lowered when desirable. The claims of the patent were as follows: "I. Boarding or pebbling skins or leather by means of a single short cylinder rolling over a table, with the requisite pressure, substantially as described. II. Raising and lowering the table A by means of the toggles Q, arm S, spring U, arm T, and cam P, or their equivalents, substantially as set forth and for the purpose described."

T. L. Wakefield, for plaintiff.

S. B. Ives, G. L. Roberts, and Causten Browne, for defendant.

LOWELL, District Judge (charging jury): I congratulate you that we have got so near the end of our labors in this case. The questions of law which apply to it have not been fully argued in your hearing, because it has happened to be more convenient for counsel to take them up at a time when you were not present, and when it was more for your convenience not to be present. I shall endeavor to explain my views in such a way that, whether right or wrong, they can not be misunderstood; because if they are wrong, either party can have recourse to the supreme court of the United States, by which any such points of law may be definitely and forever settled, so far as this case is concerned.

What the plaintiff says is his invention he is bound to describe and set out in what has been very properly called his "title deed." The law requires that the patent office shall, before a patent is issued, have a description from the inventor, of his machine—taking the case of a machine, which is this case—a substantial, full, and accurate description of the machine, so that anybody acquainted with the art to which it refers, should be able to make one by the description, accompanied with drawings and with a model, and, of course, we are to look to that description and to what is technically called "the claim," what he says he claims as new, to see what his invention is. If he had made a mistake in his claim by having imperfectly described his machine, that can be corrected by another process; that question does not, however, arise in this case.

Now, there is no dispute in this case that the machine is described with sufficient accuracy and fullness to enable anybody to make it; but there is considerable difference of opinion, as to the extent of the claim which the inventor makes. The general rule on the subject is, that patents are to be so construed, if possible, that the inventor shall have the benefit of what he has actually invented, if he has invented anything; and that is a rule which is beneficially applied to the advantage, undoubtedly, of patentees. Taking this whole description together, and the claim, I am reasonably satisfied and shall instruct you, though I think the specification is a little ambiguous, in some parts, that the plaintiff does not mean to say, "I claim a pebbling roller, however it may be used, whether by hand or by any combination of mechanism." If that were the claim, undoubtedly it would be defeated by showing that such a roller had been used in any way. I do not think that is the fair result of the whole patent, although there are some parts of it which look as though he thought he was the first inventor in that broader sense. I dare say he did think so; perhaps he was

corrected by information from the patent office which was referred to here, though not directly by evidence. Taking it altogether, I think he does not claim that; and although on reading the patent you may think he does, still it is my duty to assume the responsibility of stating what his claim is, subject to correction hereafter.

What, then, does he claim? To find out that, we look in the first place at the claim. He says: "I do claim, first, boarding or pebbling skins or leather by means of a single short cylinder rolling over a table, with the requisite pressure, substantially as described." The phrase "substantially as described," is an important one; and so also I think the words "with the requisite pressure," are very important. I think that "substantially as described," and "the requisite pressure," entitle him to say: "I claim the combination of parts which I have shown, or the substantial combination of parts that I have shown, and the requisite pressure that I have shown." That is, including the springs. "The requisite pressure." Not merely pressure enough to make the figure, but the "requisite pressure" to make it properly. And it is on that ground that I overrule the prayer of the defendant, and instruct you that it is not simply a claim for any mode of pebbling leather by means of a cylinder, but it must be by the described means, or substantially those means. It is what is called, technically, a combination or arrangement of parts, and if the arrangement is new, there may be a patent for that, although each part, taken by itself, is old. I shall come more particularly to the points of law which bear upon that hereafter. What he claims, then, is a combination of those parts. They are, the short revolving roller, with a figure engraved or sunk on its surface (or its periphery, as he says), a radial arm to give the pressure, and springs to equalize the pressure (perhaps giving some part of it; I don't know how that may be expressed), moving over the table in such a manner that the rollers shall be properly pressed upon the leather placed upon the table, and shall move over it in substantially the same line at each operation of the machine. Then he describes certain means for giving motion. He describes a bed which is so contrived that it fits precisely to the curve described by the arm. I think he must have something which is substantially of that character. That is my impression.

Now I do not mean to confine myself to any particular cases. His mode of getting his roller off the table is different from the Green machine. There is no question made about that. What he says, in effect, as I understand it, applying the facts in this case is: "Granted that this Green machine existed, and granted that this pebbling roller, used by hand, existed, I have put the two together. The Green machine," he says, "is different from mine, because that machine

is described in the patent, and was originally built to perform the operation of smoothing leather by a rubbing tool; mine is for the purpose of pebbling leather by an engraved tool which rotates." There is a difference, and no doubt, a very substantial difference, though that is a question for you. There is no question made that if it were entirely new, if nobody had heard of that roller before, that would be a substantial difference. He says: "My machine differs from the hand roller in several important particulars. This is merely a roller with a handle. Mine is the means which I have described, the radial arm, the springs, and the adapted bed; whereas, in the case of this hand machine, all those adaptations, both of pressure and equalizing the pressure, must be done by hand, by the will of the operator, and by his own strength; a much less complete machine than mine, and not having the elements of mine."

Now, to entitle a person to a patent he must be the original and first inventor of the arrangement, whatever it is, of the invention which he claims. If that invention is an arrangement of machinery by which he makes up a certain whole, he must be at least the inventor of the combination. He may have invented the parts or not, but if his claim is for a combination, he must at least have invented the combination. He must have been the first person to put those things together to effect the same result in substantially the same way. If it does not produce the same result in substantially the same way, that is evidence that it is not the same thing. He must be the first person who has put those things together to effect that result in substantially that way. It is not enough that he thinks he is original in his invention; it is not enough that he was not aware that anybody had invented it before, because the patent law is giving him an exclusive right; and to undertake to give him an exclusive right for what somebody else has really invented before, and perhaps gone to the patent office and patented, would be unjust. If it has been given to the public. it would be unjust; if it has been patented, it would be contradictory and absurd.

He must be the original and first inventor, and if the defendant in a case of this kind shows to your satisfaction that the patentee is not the first inventor of what he claims as his invention, then it is not his invention, and he is not entitled to a patent, and his patent will be void. The difficulty is in drawing the line and showing what is invention and what is mere construction, and it is on that point that I have been asked by the counsel, in various forms, to give instructions.

Now, there are some things that everybody knows. The common uses of common materials are supposed to be known. If a man merely makes a machine out of iron that has been made out of wood, and the

jury find that that is the same machine, producing the same result in the same way, that is no invention, because everybody knows that any constructor can make a machine of iron instead of wood. It is not a question ordinarily left to the jury, because it is so clear, although, strictly speaking, it is a question of fact. And there may even be a discovery which is not an invention. For instance: after Green's machine has been invented for rubbing leather, a man may discover that that machine is equally good to rub pasteboard, or something else; still he can not have a patent for it, that is to say, for the machine, though he might perhaps for an improvement in the art of manufacturing pasteboard. The man who has made the first invention has made it for all the uses to which it is applicable.

In this connection I have been asked to rule in this case, and do hereby rule in favor of the defendant. That if you find a machine existed exactly or substantially like this machine of the plaintiff's, except that it was moved by hand power instead of water power or steam, and you find that to make the change is within the ordinary knowledge and skill of any constructor, then merely applying horse power, or water power, or steam power, would not be an invention, because that has come to be, in the progress of the arts, one of those matters of common knowledge that everybody is presumed to know, unless you find that there was some unusual contrivance applied to the apparatus. That may be explained in some other way. The mere means of giving motion to a machine would not ordinarily be a part of the essence of the machine. That is stating the same thing in a different way. But on the other hand, if the plaintiff has combined old parts in a new way, so that he gets a machine which operates differently and produces a different result in kind, then the law presumes that he has something that is patentable. The mere question whether any mechanic of ordinary skill could make the combination if it is suggested, will not do as a general test of the novelty of a machine. If the machines are similar—if they produce similar results, and the question is whether it is a new combination, whether it is a new arrangement of machinery, then it is very important to know whether any constructor acquainted with one machine could, by his common knowledge and skill, make the other, and work out that result in a somewhat more perfect manner. It is an important test in that sense; not a test whether an ordinary mechanic can make the combination if it is suggested, but whether he can make the combination without such suggestion; whether he can make the change by means of his ordinary knowledge, as a means of determining the question whether there is any new machine at all. That is to say, it is the ordinary knowledge and skill of the mechanic that are in question, not merely the ordinary skill of the mechanic.

Suppose, for instance, the man who invented gunpowder gets a patent for it. If it was nitroglycerine, perhaps it might not be useful, and so would not be the subject of a patent; but suppose it was gunpowder. There is no question but that gunpowder is useful, and it is an invention. Suppose he had said: "I combine saltpetre, sulphur, and charcoal, in a certain way, and produce a somewhat startling result." It would be no answer to the novelty of that invention to say that any chemist could do it after he had been shown how. The question is: Did every chemist have the knowledge as well as skill? Because, if not, there is invention, and it is a proper subject for a patent.

Another point which I have not before seen in the precise way in which I am about to put it, is the principle of law which is to govern you in determining the time when this invention was made. For the purposes of this case, I shall rule that the principle of law is, that he is the original and first inventor of a machine, or combination, or whatever it is, if it was not known or used by others before his discovery or invention; the man who has made an invention that was not known before he made it. That does not mean that he got his machine into the complete state in which you find it in the patent. Neither does it mean the first moment at which he conceived the idea that it would be a good thing to do that. It means not only when he conceived that such a thing would be a desirable thing to do, but when he had conceived the idea of how to do it substantially as he has done it. I shall not have occasion to refer to that again, perhaps. That is my view of the law.

Now, the defendant says that there were machines which were substantially like the plaintiff's invention before the date of his discovery. On that point there is this to be observed in the outset. They must have been working machines, not mere experiments. They must have done work, or been capable of doing work, and not been mere experiments, afterwards abandoned. Whether they were in fact operated for a greater or less time, is of no importance except so far as that may tend to make you believe that they were or were not mere experiments; in that view, the fact is of some consequence. But if you are satisfied that they were machines capable of doing work, substantially by the same arrangement as the plaintiff's, actual working machines, then the fact that they were operated but a short time, and then abandoned for other reasons than because they had failed as machines, is of no consequence.

The first in order of time is the English machine, described in a specification which, for the purposes of this case, it is admitted was published, the machine appearing to have

been made in 1808, and the specification published in 1856, both dates anterior to the plaintiff's invention — admitted, so far as date is concerned, to be anterior.

Now, the question is: Did that machine contain substantially the combination and arrangement of parts which the plaintiff claims, and would it do the same work? That is, would it accomplish the same result in substantially the same way? You have heard both parties, and I do not intend to go over the arguments or the evidence. The defendant has pointed out wherein he thinks they agree substantially; the plaintiff has pointed out the differences. If you find that there are no differences that are material in the operation of the machine, as a machine for pebbling leather, then it supersedes the plaintiff's invention. If you find that it does differ essentially, that the parts are different, the combination different, and that it would not operate in the same way to produce the same result substantially, then they are different.

The plaintiff says there are no springs for the purpose of equalizing the pressure. I have not examined the patent since he made that suggestion, and it is for you to say what the machine is. If there was anything in the language that was ambiguous, of course it would be for me to construe it; but you are to say what the machine is. If it does not contain any springs to equalize the pressure, or if it does contain something called a spring, if it is a spring substantially different, and that would not operate to produce the same result in substantially the same way, then the plaintiff's combination is wanting.

Mr. Browne.—I understand your honor to leave that to the jury, to find on the description.

THE COURT.—Yes, taking the machine as described and drawn. So of the other parts. If it has not a bed which is substantially like that of the plaintiff, for the purposes of this arrangement and accomplishing this result, if it is not substantially an arm like that, it would be a different machine, a different combination.

But there is another point, a little closer, upon which the parties have asked more special instructions. That machine in the drawings, as explained by the experts, it is said (and that is a matter of fact), does not show any revolving roller. There is a passage toward the end of the patent in which it is suggested or said that a roller may be used in a certain way for "dicing or printing." Now, the plaintiff has pointed out, very forcibly, that that contradicts flatly the description of the machine given in the other parts of the specification. There is no doubt about that. It does, because when he describes it in other parts, at any rate in those passages which were cited, he describes the tool used distinctly as a rubbing tool. I mean the tool he was then speaking of. I do not think it necessarily follows that he may not afterwards have got the idea: "Well, after all, this may be used with a revolving tool." His language is ambiguous; it is doubtful; but, on the whole, I have thought and am still of the opinion that he meant to say in that passage, that a revolving tool may be used. I think that is the fair import of his language, even when it is considered that it is directly contradictory to the other parts of the patent.

Now, the defendant asks me to instruct you that if you find that the Hebert machine, as shown in the drawings and described in the descriptive parts of the specification, contains the plaintiff's combination of mechanism substantially, with the single exception that in that combination a tool, which is firmly held and rubs, is used, or is described, and that the Hebert specification suggests the substitution for such tool, if desired, of a tool which shall have an ornamental figure engraved upon it, and shall be revolved upon its own axis, so as to indent the leather, and if you find that such is substantially the tool used, and that that is the operation described by the plaintiff; and if you further find that the substitution required no change except such as is within the ordinary skill and knowledge of mechanics, involving no invention of the means of applying said revolving tool, then the Hebert patent anticipates the plaintiff's: the defendant of course assuming that all the other parts are substantially similar. I instruct you, that if the suggestion which he there makes is of itself such a description of the machine, that any mechanic of ordinary skill and knowledge could at that moment have made the substitution, there being such a tool in existence, and well known; that is to say, if it would be within the ordinary knowledge and skill, just as I ruled before, of a mechanic, who would know what tool was meant, and could make it by his ordinary skill, then it would anticipate the plaintiff's patent, but not otherwise.

Now, whether there was such a tool well known at that time, it is for you to say. The case has been fully argued upon this point as to the likeness or difference between these two machines, whether the Hebert machine has substantially the same combination as the plaintiff's, and whether, after all, it could do the work, and that is of great importance. I do not mean to express any opinion upon that point of fact, or any point of fact; if I do, you are to take it for nothing. But, would it do the work? Undoubtedly, that is a point for the defendant to prove. He is to prove a machine existing before the date of the patent, which would do the work. If your minds are balanced exactly on that question, you will have to find for the plaintiff on that point.

The other machine which has been princi-

pally relied upon by the defendant, if it may not be called two machines, is that. which has been known in this case as the Garner, or Garner-Davis machine; first the Garner, and second, the Garner-Davis.

As I understand the arguments, the differences which the plaintiff finds between his machine and that of Garner, supposing you find, as matter of fact, that the Garner machine existed, with the pebbling roller, for the purpose of ornamenting leather, before the date of the plaintiff's invention, are, as I understand it, that the spring is different (and it is quite different in form), and that the bed is different, so that the coöperation, as he says, between the arm and the bed will be substantially different, and make the machine so much different that it will be substantially a different combination of machinery, and that the Garner machine does not have the advantages of his. A mere difference in form is not usually very important, if the work is done in substantially the same way. He says that the spring is different, because this spring gives an equal pressure throughout, and the elliptic spring gives a varying pressure throughout; and so of the bed; that the precise coöperation of this arm and this bed in his machine enables you to be certain that you get exactly the same pressure. You have the spring giving the same pressure; you have the bed in exactly the same arc described by the arm, so that you get exactly the same pressure, both by the spring and the bed in the plaintiff's machine, while in the Garner machine you get a varying pressure throughout, not only because the spring varies in its pressure, but because the bed varies. I believe I have stated the proposition of the plaintiff correctly.

Now, the question for you is, if you find that that difference exists, whether it is a substantial difference in the operation of the machine. You have heard the experts upon that subject; you have heard to some extent, I do not know that it has been very fully gone into, the evidence as to the result in practice. It is for you to say, supposing you find that that machine existed as I have said, and was used as an actual working machine for pebbling leather, it is for you to say whether the differences are such that the plaintiff's combination is new. I do not know that I can help you much in that. If the change is not important; if it merely makes the machine work a little truer, but that degree of trueness is of no essential importance, then certainly you can not say that the combination is different. If it is of essential importance, then you can say that the combination is different. Now, in ascertaining whether it is of substantial importance, no doubt it is very useful to find out whether, as matter of fact, they would do the same work. The plaintiff says it is not shown that the Garner machine would work anything but sheepskin; that it is not

calculated to give the amount and kind of pressure necessary for other work. I shall leave that matter to you, gentlemen, as a. matter of fact. But on the matter of law, I wish to be understood that my ruling is distinct, that if they are not substantially different, and if the change that was made in that machine to get it into the plaintiff's machine was a change which any mechanic of ordinary skill, using skill and not invention, could have made, on finding that that machine did not operate quite so well as it should, if it was merely a difference in construction, which any mechanic could make, it would be no invention. But if the parts. are substantially different, and were not within the common knowledge of constructors, and the plaintiff has made the new combination, it is no answer to say somebody else found out that bed, somebody else found out these springs. His patent is not for the bed or the springs alone. If he first combined them, the same parts not differing in themselves, if it was beyond the ordinary knowledge and skill of the mechanic to make the combination, then there is invention in the patent.

Passing from that, the defendant introduces what he calls the Garner-Davis machine, which, as I understand it, was substantially the Garner machine, up to the time when Mr. Davis put in a contrivance for allowing the arm to go back without touching the table. Up to that time it was substantially the Garner machine, as Garner himself describes it. And that machine, in any view, comes into the case properly enough, even if it is the Garner machine, because you may say that the Garner machine was never used, and you may think the Davis machine was. At all events it is brought in to show that the table and roller were used before the date of the plaintiff's machine.

Now, there has been a good deal of controversy upon that matter of date. The defendant insists that he has shown, with reasonable certainty, that it was six weeks or two months after August, 1860; the plaintiff says that on the evidence, it was probably 1861. The defendant's witnesses support their views of the date by reference to certain events, and you will remember what those events were, and how likely they are to enable them to fix one year rather than another. The value of these aids to recollection depends upon two or three circumstances. On the importance of the event itself, primarily, and next on the closeness of its connection or association with the fact it is adduced to support. If Mr. Perkins tells you: "I enlisted at such a time, and I did this job immediately before I went," there is a natural connection between the events, and he would be likely to remember them. If he went to the war, and knew that he did this job just before he went, he would be pretty likely to remember it. If he had not been

to the war, and had been doing jobs for the defendant all along, it would be difficult for him to recollect in what year he did do it. You ask a farmer in what year he saw a new plow which his neighbor was using, but which he did not think much of, and which he did not think it worth while to buy. His neighbor is dead now, and you want to know when that plow was first used. Well, he thinks it was the year that he had a certain field sowed with rye. His wife thinks it was the year he had it sowed with barley. His head man thinks it was the year he had it sowed with clover. They talk it over, and finally settle that it was the barley year, and they all come and swear it was the barley year. They do not recollect the time, but that is the best they can do, and you have to take it with that qualification.

You are to inquire whether the Davis machine, with the pebbling roller, was used before the date of the plaintiff's invention, taking the date of that invention to have been such as you shall fix under the instructions already given; and if so, whether it is substantially the same combination. In that point of view, I do not know that it differs very much from the Garner machine, and the observations that I have made about the Garner machine would apply substantially to that.

The jury subsequently came into court and propounded the following questions: "The jury respectfully ask the following questions of his honor the judge: Query.—Supposing that parts of a machine taken from prior inventions, which parts existed separately beforehand, should be combined in a new machine which should work substantially better than any pre-existing machine, would said machine be a new invention, and therefore patentable? Edward N. Perkins, Foreman."

LOWELL, District Judge. A new combination of old parts is patentable. If the essential parts which go to make up a combination or arrangement of machinery have never been combined before, it is no matter that they existed separately in other machines, if by their combination a new and beneficial result is produced, or even an old result, in a better manner. The question is of the novelty of the combination of the essential parts. If, however, there are two combinations in which you find it difficult to decide whether they are the same or not, and you find they accomplish results alike in kind, the fact of an improved result and improved working is useful in aiding you to come to a decision; and the question in that case often is whether the changes are such as a mechanic of ordinary skill, from the knowledge and skill which competent mechanics have naturally, would make to improve the working of the machine. But if the combination is new; if you are satisfied

of that, it is no matter that the parts are old.

In considering whether one element of a combination is substantially the same as an element of another combination, the fact that one works better than the other, coupled with the fact that the change is not within the ordinary knowledge and skill of all mechanics, is highly important and often decisive. This is to be taken in connection with what I have before instructed you.

The jury found a verdict for the plaintiff, assessing damages at $417.

[The judgment based on this verdict was subsequently reversed by the supreme court. See 10 Wall. (77 U. S.) 117.

[For another case involving this patent, see note to Woodman Pebbling-Mach. Co. v. Guild, Case No. 17,981.]