# ROSELL *v.* ALLEN.

PATENTS; PATENT PRACTICE; INTERFERENCE.

1. Where doubt exists as to the correctness of a ruling of the Patent Office upon a question of practice and its application, the fact that all of the tribunals of that office have reached the same conclusion, for reasons strongly stated in their decisions, will have great weight with this court on appeal; *following* In re Barratt, 11 App. D. C. 177; In re Neill, Id. 584, and Fowler v. Dodge, 14 Id. 477.

2. Where in an interference case the issue covers the method of tanning, consisting of subjecting the skins to the action of a certain bath, and one party discloses a one-bath process, using that bath and also a two-bath process, which is distinct from the one-bath process, using it as the second bath, and his opponent discloses only a one-bath process, the issue will be limited to a one-bath process.

3. The second count of such an issue, which covers "a tanning bath," *held* to be broad enough to cover either that used in a one-bath process, where it performs the sole function of tanning, or the second bath of a two-bath process, where it acts first as a reducing agent and then as a supplementary tanning agent.

4. Where, in such an interference, it is conceded that R was the first inventor of and the first to use the particular bath in question, but always as the second bath of a two-bath process and as a reducing and not a tanning bath, he will not be held to be the first inventor of the process of the first count of the issue, where such count is construed as limited to a one-bath process of tanning.

5. Where, under such circumstances, R used the bath only as the second bath of a two-bath process, but discovered that it acted first as a reducing agent and then as a supplementary tanning agent, it *held*, that there is no analogy between this certain and direct result of the invention of the bath in issue and these accidental results of inventions which are not understood or appreciated by the inventors and which are judicially held to be immaterial.

No. 144. Patent Appeals. Submitted May 9, 1900. Decided June 6, 1900.

HEARING on an appeal from the Commissioner of Patents in an interference proceeding. *Affirmed in part and reversed in part.*

The facts are sufficiently stated in the opinion.

*Mr. Philip Mauro, Mr. Reeve Lewis* and *Mr. C. A. L. Massie* for the appellant.

*Mr. W. Orison Underwood* and *Mr. Charles L. Sturtevant* for the appellee.

Mr. Justice Shepard delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding involving invention in the art of mineral tanning, as embraced in the following issue:

" 1. The method of tanning skins which consists in subjecting them to the action of a bath containing sulphites, bisulphites or hyposulphites of chromic oxide.

" 2. A tanning-bath containing sulphites, bisulphites or hyposulphites of chromic oxide."

The examiner of interferences awarded priority to John L. Allen on count 1 of this issue and to C. A. O. Rosell on count 2. Each party appealed to the examiners in chief, who awarded priority to Allen on both. Their decision was affirmed on appeal to the Commissioner.

. Allen filed his application on April 23, 1896. Rosell filed on August 11, 1896.

One and two-bath processes, in which chromic oxide is the essential tanning agent, had been patented, and used in the manufacture of leather, before. the discovery of the process and bath of the issue.

The leading two-bath process is that invented by Schulz, which, patented in 1884, has been sustained in repeated decisions. *Tannage Patent Co.* v. *Zahn,* 70 Fed. Rep. 1003; *Tannage Patent Co.* v. *Donallan,* 93 Fed. Rep. 811, 813.

Schulz, after dressing the skins in the usual manner, placed them in a first bath where they remained until sufficiently impregnated with the chromic acid produced by the constituents of the bath. A second bath was then prepared, usually of hyposulphite of soda and hydrochloric

acid. This combination generated sulphurous acid, which, acting upon the chromic acid in the skin, reduced it to chromic oxide and thus accomplished the conversion into leather. The chief difficulty in the operation of this process was, that the resulting deposit of free sulphur in the tanned skin often affected the salability of the leather.

As stated in the decision of the examiner, the typical one-bath process is found in the patent to Dennis, No. 495,028, wherein "the tanning agent, chromic oxide, is in solution in the presence of chloride of chromium, and when the hides are placed in this bath they extract the chromic oxide directly therefrom, and are immediately converted into leather."

Rosell, as the record shows, was a chemist, well informed in the state of the art of mineral tanning, and had been an assistant examiner of the Patent Office from 1886 to December, 1895, in the class to which this invention belongs. During this period, he had made many experiments in the art, and his attention was specially called to the operation of the Schulz process with a view to overcoming the difficulty that has been mentioned as frequently occurring therein. In the course of his experimentation, he discovered and used the bath of the issue composed of sulphites, bisulphites or hyposulphites of chromic oxide. This long antedated Allen's discovery, so far as the record shows, because he, having introduced no evidence, is confined to the date of his application. After repeated trials of Rosell's invention by certain licensees of the Schulz process, they became satisfied of its superiority, and substituted it for the latter in their manufacture for the trade. Having appliances adapted to the Schulz process, their use of Rosell's was in the same way of a first and second bath. Rosell's application covers both a one-bath and a two-bath process, which is fairly described and compared with the Schulz process by the examiner as follows:

"He prepares a bath, which contains chromium sulphite,

16 Ct. App.—37

hyposulphite, or other reducing salt of chromium. This bath, he states, may be used either as the sole bath of a one-bath process or as the second bath of a two-bath process. In the latter case when hides, previously treated by a bath which has caused them to be more or less impregnated with chromic acid or chromium trioxide, are introduced into this chromium-sulphite or other similar bath, two reactions take place which it is necessary to notice. First, the chromium trioxide in the hides is reduced by the action of the reducing chromium salt to chromic oxide and the hides are partially tanned. Next, chromic oxide is taken up directly from this bath by the hides and the tanning action thereby completed. In the Schulz process it was necessary that the hides should receive in the first bath all the chromium necessary for the tanning, because the second bath had but the single function of reducing the chromium compound already in the hides to chromic oxide. In the Rosell two-bath process it is only necessary to impart to the hides in the first bath a fraction of the chromium necessary, because the second bath not only reduces the chromium compound already in the hides to chromic oxide, but also furnishes directly to the hides sufficient chromic oxide to complete the operation. When this same bath of chromium sulphite or other chromium reducing salt is used as a single bath, the hides are immersed therein, and by their own power abstract directly therefrom chromic oxide."

Allen's is thus stated by him also: "Allen's application describes and claims only a one-bath process. His bath consists of a solution of a chromic salt and a sulphite, bisulphite, or hyposulphite of an alkali or alkaline earth. This, of course, forms a chromium-sulphite or other reducing salt of chromium, and the action of the bath is similar to that described by Rosell."

Allen's original application was subjected to many objections by the examiners, and amended from time to time in accordance therewith, and was finally divided. The final

claims, which are substantially followed in the terms of the issue, were filed after the principal examiner had, on May 10, 1887, advised him as follows:

"What the applicant appears to have novel in his case is a method of chrome-tanning, by a *single-bath* containing, by virtue of double decomposition, sulphites, hyposulphites or similar reducing salts of chromic oxide ($Cr_2O_3$); and claims drawn on this line may, it is thought, be allowed, subject, of course, to the result of an interference."

Claim 1 of Rosell's application, which is one of ten embraced in the declaration of interference, reads thus:

"In the art of chrome-tanning the improvement which consists in subjecting a skin to the action of a reducing salt of chromium; without the addition of a non-reducing acid in a free state."

As Rosell first invented the particular bath described in count 2 of the issue—the chemical composition that effects the tanning of the skin, whether used in a one-bath process as claimed by Allen, or as the second bath of a two-bath process according to the usage of manufacturers under Rosell—the chief discussion in the case has been in respect of the meaning and scope of the issue as settled on the declaration of interference.

Rosell argues that "a reducing salt of chromium," as mentioned in his claim 1, is descriptive generically of the various salts—sulphites, bisulphites and hyposulphites—capable of use in operating the invention, and not merely of their function as one step only in a process. Taking that claim, which is embraced in count 1 of the issue, in connection with the bath described in count 2, his contention is, that the issue must be broadly read as involving the method, or process, generally, of tanning skins through the action of a bath containing a reducing salt of chromium, and ought not to be confined to either the function of reducing the chromic acid absorbed by the skin in a first bath, to the tanning agent, or to a tanning-bath exclusively.

The view maintained in all of the decisions of the tribu-
nals of the Patent Office is, that the application of Rosell
describes two distinct processes—the one-bath and the two-
bath process; that the earlier application of Allen describes
and claims distinctly the one-bath process and nothing
more; and that the issue embodies, and must be confined
to, that process. It is conceded that Rosell first used the
particular bath, but always as the second bath of a two-
bath process, and as a reducing and not a tanning bath.
His evidence of discovery and experimental use of the bath
as a tanning bath also, was rejected as insufficient in law to
show priority of invention, over Allen, of the one-bath pro-
cess of count 1. Hence the agreement of the several tribu-
nals upon the award to Allen as regards count 1 of the issue.

In regard to count 2, as we have seen, there was disagree-
ment. The examiner of interferences was convinced that,
whilst Rosell had not used the bath "when it performed
the sole function of tanning—that is as the single step in a
one-bath process," he had used it as a second bath, and dis-
covered that it performed the dual function, first, of reduc-
ing the chromic acid absorbed by the skins in the first bath,
and, second, of furnishing additional chromic oxide directly
to the skins; thereby acting first as a reducing agent and
then as a supplementary tanning agent.

The examiners in chief, whose decision was adopted by
the Commissioner, were of the opinion not only, that count
1 should be restricted to a single-bath process, but also that
count 2 should be restricted to the bath used in a single-
bath process, as a tanning-bath exclusively. They were
also of the opinion that Rosell, in the course of his experi-
mentation before referred to, had in view a two-bath process
only, as an improvement on the Schulz method, and that,
prior to Allen's application, he had never disclosed to any
one a discovery that the second bath would alone perform
the operation of tanning. However, they do say, "the facts

indicate that Rosell was operating to get a new two-bath process for tanning skins, and that some time after January, 1896, and before the filing of his application on August 11, 1896, in the working of his process, this modification of it to make the second bath a tanning-bath became known to him."

Then follows the conclusion: "The evidence establishes that Allen was the first to conceive that skins or hides could be tanned solely by the bath of the two counts of the issue, and was the first to tan leather by the use of that bath."

Consequently they affirmed the decision of the examiner of interferences as to count 1 and reversed it as to count 2.

If the question did not involve the general practice of the Patent Office, and were before us as an original one, we would be strongly inclined to adopt the broad reading of the issue as contended for by Rosell, and to regard him as claiming a generic invention in the bath, with an expressed preference for its specific use in a two-bath process; for, so far as this record shows, he was undoubtedly the inventor of the bath itself.

As said by Robinson (Patents, Sec. 535): "The same invention may be generic to the individuals of its own genus, and specific in its relations to some wider invention representing the group to which it belongs." See, also, *Ex parte Ewart*, C. D. (1880), 78, 83.

As the practice of the Patent Office is involved, and as all of the tribunals thereof have agreed on the rule and its application, for reasons strongly stated in their decisions, we are not sufficiently satisfied of their error to justify us in reversing their conclusion. *In re Barratt*, 11 App. D. C. 177: S. C., 14 Id. 255; *In re Neill*, 11 App. D. C. 584, 588; *Fowler* v. *Dodge*, 14 App. D. C. 477.

The question is somewhat analogous to those involved in part in the following cases, where the ruling of the Patent Office was accepted as controlling: *Cushman* v. *Lines*, 10

App. D. C. 156, 159; *Breul* v. *Smith,* 10 App. D. C. 180, 185; *Tracy* v. *Leslie,* 14 App. D. C. 126, 135; *Hisey* v. *Peters,* 6 App. D. C. 68, 70.

Not without misgiving that the result may ultimately work injustice to Rosell—regarding him as the real discoverer of the novel and useful bath—we are constrained to affirm the decision on the first count, for there is no evidence, sufficiently satisfactory, to show that he ever actually used the bath for tanning in a single-bath process.

As regards the final decision awarding priority to Allen on the second count, we have come to a different conclusion. To the extent that it involves a question of law only, the decision is, in our judgment, erroneous. Passing by the question of the sufficiency of Rosell's evidence to show that, prior to Allen's application, he discovered and utilized the independent tanning property of the bath, we agree with the examiner of interferences, who said in his decision:

"It does not appear necessary to determine whether or not Rosell has established this latter point. It is clear that he was, so far as the record shows, the first inventor of that particular chemical composition to be used in the operation of tanning hides. It was a bath for use in this art, and under the familiar rule Rosell is entitled to that bath for any use to which it may be put. . . . It is a tanning-bath, and to hold that the term tanning is to be restricted to the narrow construction contended for, would be to give that term a meaning which is not attached to it usually and ordinarily."

The bath invented by Rosell discloses the means, and the only means, by which the result—the complete conversion of the skin into leather—can be effected. By a well-established rule of the patent law the inventor is entitled to all the uses to which his invention can clearly be put, "no matter whether he had conceived the idea of the use or not." *Roberts* v. *Ryer,* 91 U. S. 150, 157; *Ansonia Co.* v. *Electrical Supply Co.,* 144 U. S. 11, 18; *Lowell Mfg. Co.* v. *Cary,* 147

U. S. 623, 635; *Miller* v. *Eagle Mfg. Co.*, 151 U. S. 186, 201; *Hill* v. *Hodge*, 12 App. D. C. 528, 530; *Stow* v. *Chicago*, 104 U. S. 547, 550.

There is no analogy between the certain and direct result of the invention of the bath of the issue, and those incidental, or rather accidental results of the inventions, whether processes or devices, described in the cases cited on behalf of the contention of the appellee, Allen.

In *Tilghman* v. *Proctor*, 102 U. S. 707, 711, the doubtful and accidental formation of fat acid claimed as the result of a process was regarded as of no consequence, for as was said by the court: " What the process was by which it was generated or formed was never fully understood. Those engaged in the art of making candles, or in any other art in which fat acids are desirable, certainly never derived the least hint from this accidental phenomenon in regard to any practicable process for manufacturing fat acids."

The other cases need not be reviewed; they go no further than that. *Clough* v. *Barker*, 106 U. S. 166, 175; *Pittsburgh Reduction Co.* v. *Cowles Electrical, etc., Co.*, 55 Fed. Rep. 301, 307; *Tannage Patent Co.* v. *Donallan*, 93 Fed. Rep. 811, 821.

Although we have passed by, as unnecessary to the disposition of the case on this point, the evidence offered by Rosell to show his knowledge and utilization of the second bath as a tanning as well as a reducing bath, we are not to be understood as regarding it of no weight. Bearing in mind his competency as a chemist, the special direction of his constant efforts in the development of this art, and his discovery and knowledge of the chemical qualities and possibilities of the reducing salts of chromium therein, it would not be unreasonable to deduce therefrom the inference that he actually discovered the supplementary tanning property of his new bath, before the date of Allen's application, and, as he says, tested it. Consider in addition, the manner in which his two-bath process was necessarily operated in manufacture on a large scale—a use adopted as the preferred

form of manufacture for reasons which he undertook to give—and it seems hardly possible to believe that he did not observe and knowingly utilize the bath as a reducing and as a tanning agent also.

For the reasons given, the decision appealed from will be affirmed as to count 1, and reversed as to count 2 of the issue. It is so ordered; and the proceedings and decision will be certified to the Commissioner of Patents as required by law. *Reversed.*