## HEIL CO. v. WALTER.
### No. 176.

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1931.

Morsell & Morsell, of Milwaukee, Wis., and William R. Davis, of New York City, for appellant.

Redding, Greeley, O'Shea & Campbell, of New York City (Worthington Campbell, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit is for a dumping mechanism for semitrailers. It was allowed with four claims but only those numbered 2 and 3 are now in issue. They read as follows:

"2. In combination with a tractor and semi-trailer, dumping mechanism mounted wholly on the tractor, a fifth wheel connection between the tractor and semi-trailer, one element of which is carried on the tractor and connected with the dumping mechanism and the co-operating element of which is carried on the trailer, and means between the fifth wheel connection and the dumping mechanism affording capacity for universal movement of the fifth wheel during dumping.

"3. In combination with a tractor and semi-trailer, dumping mechanism carried wholly on the tractor, a fifth wheel universally connected to the dumping mechanism and a complementary connection for the fifth wheel on the trailer, and means on the tractor for engaging the fifth wheel and holding it against universal movement when in lowered position."

The defendant relied on five grounds of defense, which included anticipation by prior patents and noninfringement. It will not be necessary to consider more than the two mentioned.

Before this patent, the use of detachable trailers with tractors was common. The prior art shows devices for connecting the tractor and trailer in such a way that they could be disconnected without unloading the trailer, so as to give an opportunity for the tractor to be used elsewhere, and also discloses means for hoisting the end of the trailer supported by the tractor so that the trailer body would be tilted at an angle, usually about forty-five degrees, sufficient to dump its load. Walter had for his main object mechanism for dumping the trailer's load without any special co-operating mechanism on the trailer itself. Thus the expense of duplication of such special mechanism with each trailer could be avoided, and the tractor used efficiently with any trailer of suitable size equipped only with the upper half of a fifth wheel. To do this required mounting all the hoisting means on the tractor.

To bring about the desired result, he placed the upper half merely of a fifth wheel beneath the front end of the body of the trailer. Any workable kind of fifth wheel would do, although the simple two-bearing construction with a king bolt which he used was probably the most feasible. Then he mounted the lower half of the fifth wheel on a universal joint, which was supported at the end of an A-bar, introduced only to increase the lifting range of his hoisting device, and connected this A-bar with his mechanical hoisting means mounted at the rear end of the tractor. The universal movement between the lower half of the fifth wheel and the A-bar, which formed a part of the hoisting means, permitted the trailer to be dumped or tilted by raising the front end of its body when in any position that it would normally assume in use without placing undue strain on either tractor, trailer, or hoisting device.

One more desirable feature was incorporated in Walter's patent. The advantage of universal movement between the fifth wheel

and the hoisting device when the front end of the trailer body was being, or had been, lifted would be somewhat offset by the disadvantage of having the front of the trailer body as unstable when being loaded or moved as it would be if allowed to tip then on a universally moveable fifth wheel. To eliminate such universal movement when it ceased to be desirable, Walter placed a horizontal crossbar or lugs at or near the bottom of the lower half of his fifth wheel that would engage in suitable slots on the tractor when the hoisting device was in its lowest, or the normal, loading and transporting position. This did away with the universal movement of the fifth wheel and permitted only horizontal turning then except for such flexibility as the crossbar or lug engagement in the slots, held only by the weight of the trailer body, would permit. It also relieved the hoisting mechanism from the strain of transmitting the pull of the tractor to the trailer when in operation. All such forces were taken by the lugs in the slots and acted directly on the trailer without going through the hoisting mechanism or the universal joint at all. Claim 2 of the patent does not include the elimination of universal movement. Claim 3 does.

An examination of the patented disclosure of the prior art shows that the field which Walter entered had been well worked over. Various hoisting or dumping devices for use on dump trucks and with semitrailers had been patented. The problems presented by a body carried wholly on a truck chassis and those involved when the body is on a detachable semitrailer, while largely similar, are not the same in many details, due to the fact that in a truck the same frame carries everything, while the semitrailer is a separate entity entirely removable from the hoisting device and the tractor chassis and carries a body supported at the rear by wheels of its own and only at the front end by the tractor. With this difference in mind, we have examined with care the prior patents relating to semitrailers. While there are several, No. 846772, granted Beadle March 12, 1907, comes the nearest to the patent in suit, although Blum, No. 1,523,249, is very close. As Beadle's specification plainly shows, he was principally concerned with a means mounted wholly on a tractor for raising and lowering a "universally-jointed turn-plate carried by the tractor-frame" to enable the tractor to be used with trailers of varying heights. He had a complicated, but apparently effective, hoisting means, actuated by turning two upright screws and thereby raising and lowering at will, within the limits of the threaded portions of the screws, the universally-jointed turn-plate (which was what he called the lower half of what Walter refers to as a fifth wheel capable of universal movement), on which the part of the turn-plate on the trailer rested. This latter was the counterpart of the upper half of Walter's fifth wheel. Beadle did not disclose dumping, to be sure, but that is entirely immaterial, as Walter himself not only admits, but claims, as we shall see when we come to the question of the defendant's infringement. Dumping may be used in this connection as meaning only hoisting carried to the point where the material with which the trailer is loaded will slide out of the body. And, conversely, we may, to give the patentee a fair and reasonable construction of his patent, take dumping mechanism to include hoisting mechanism which raises the end of the body to a point less than necessary to dump. Either use is perfectly obvious. See Stow v. Chicago, 104 U. S. 547, 26 L. Ed. 816; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121. Beadle disclosed every element of claim 2 of Walter's patent, and accordingly we hold that claim anticipated and invalid.

In claim 3 Walter added "means on the tractor for engaging the fifth wheel and holding it against universal movement when in lowered position." Beadle did not have such means, and his trailer was subject to whatever motion in operation the universal movement of the turn-plate on the tractor permitted. Likewise all traction forces were transmitted from the tractor to the trailer through this means of universal movement.

In Mayer patent, No. 1,595,902, a hoisting device is disclosed which uses one screw having a rounded top which presses up into a kind of socket on the bottom of the trailer body. This permits the trailer body to move on it freely, and, when the screw is lowered so that the portion of the fifth wheel on the trailer rests upon the lower half of the fifth wheel mounted on the tractor, the connection thus made is rigid, except for turning in the plane of the surface of the lower fifth wheel member. But it will be observed that all universal movement takes place above the lower half of the fifth wheel which is immoveably fixed to the tractor frame. In Daum's patent, No. 1,316,358, there is a rocking bolster or handlebar which is used in connecting the tractor and trailer, but no universal movement of a fifth wheel is provided for, and, of course, what is never present cannot be eliminated in the lowered position only. Sanderson's patent, No. 1,332,308, relates to a dump

truck. He uses cables, has no universal movement, and needs none, because everything is mounted on the one truck chassis. In Edwards, No. 1,482,510, we find a dump truck installation also. There is some appearance of universal movement here. Pistons are used for hoisting, and the body may not only be tipped to dump at the rear, but at either side. Yet when the body is lowered it is engaged at both sides by contacts with the chassis which hold the body rigid with the frame and so hold it from movement on the piston heads. Although this construction permits three-way dumping, only one-way dumping can be used at a time, and universal movement is never possible when the dumping mechanism is being operated, no matter whether that particular movement is to either side or to the rear. Claim 3 covers a new and useful combination of the disclosure of claim 2 with a means for doing away with universal movement of the fifth wheel when the trailer body is lowered, and is valid.

The claimed infringement is a hoisting device on a tractor for use with a semitrailer, and was built by the defendant, Heil Company, for the Borden Company, which uses it in the transportation of milk in bottles, empty bottles, and the like, which are unloaded manually and never by dumping. The patentee justly claims, we think, that actual dumping is immaterial. Before building the Borden device, the Heil Company, which has long been engaged in building hydraulic hoists, adapted its hoist for use with the construction of Walter's patent at Walter's request. This adaptation of the Heil hoist to the Walter patent made it possible to do away with the A-bar lever used by Walter. A successful and satisfactory result was obtained. The defendant company made several such installations for Walter, and became thoroughly familiar with the Walter construction.

The Borden Company had been using semitrailers with tractors that could be disconnected when loaded only by using jacks manually. This method was not satisfactory, was dangerous to workmen, and severe injuries had been caused, when tractors were disconnected for use elsewhere while the semitrailers were being unloaded or left with their loads as and where desired. It applied to the defendant for a hydraulic hoist mounted on the tractor in such a way that the tractor could be safely disconnected from one trailer and used with another. The tractor semitrailer combination then in use by the Borden Company consisted of a tractor which carried the lower half of a fifth wheel

mounted on a bolster and had U-pieces on the frame to hold the ends of this bolster when the tractor and trailer were in running position. This took the traction forces and permitted a turning movement of the bolster in the sockets to avoid strain on the fifth wheel to some extent. There was no true universal movement of the fifth wheel, because lateral movement was limited to what little could take place with the ends of the bolster held down in the U-pieces only by the weight of the trailer.

■■ The defendant put its hydraulic hoist into the Borden construction. The result was the old Borden tractor semitrailer hookup with the Heil hydraulic hoist. We fail to see how any information gained from Walter could have helped. Two hydraulic pistons exert a lifting force at the bottom of the bolster, one at or near either end. As these pistons are moved up by equal pressures, any strain on the trailer which will relieve the weight on either piston, without equal relief on the other, will permit the relieved piston to rise above the level of the other, and so lateral movement of the bolster, so riding on the pistons, is permitted. The ends of the pistons are somewhat loosely held in their sockets at either end of the bolster to allow some rolling of the bolster on the pistons, and in this way a kind of universal movement between the tractor and the trailer is obtained. The significant feature of this construction which distinguishes it from claim 3 of the Walter patent lies in the fact that the universal movement is not between the fifth wheel and the hoisting mechanism, but between the trailer and tractor through the hoist. It must use the hoisting means, not only for raising and lowering the front end of the trailer body, but as a part of the "universal joint." No fifth wheel is "universally connected to the dumping mechanism" as in the patent, but a new kind of hoisting means permits a part of the "dumping mechanism" itself to move to give what takes the place of the Walter fifth wheel such universal movement as is obtained. The claimed infringement does not derive such universal movement as is present in it by the same mechanical means as the patent. Such movement is not at the same relative place, and what is permitted so far as lateral movement of the bolster is concerned is made possible solely by the inherent ability of the pistons of a two-piston hydraulic hoist to respond separately to the effect of varying loads at the top of each. It would be quite impossible with the lifting means disclosed by Walter to do without his universal joint between the

lower half of the fifth wheel and the hoist and get the same results. That element of the claim cannot be ignored in the construction of his patent. Wright v. Yuengling, 155 U. S. 47, 15 S. Ct. 1, 39 L. Ed. 64; Yale Lock Mfg. Co. v. Greenleaf, 117 U. S. 554, 6 S. Ct. 846, 29 L. Ed. 952. As the claimed infringement does not have it, it does not infringe. Ingersoll et al. v. Delaware & Hudson Co. (C. C. A.) 37 F.(2d) 465.

Decree reversed, with directions to enter a decree for the appellant, with costs.