# NEW YORK CENTRAL RAILROAD COMPANY *v.* MARCONE, ADMINISTRATOR.

No. 212. Argued February 25, 26, 1930.—Decided April 14, 1930.

*Mr. William H. Carey,* with whom *Mr. Albert C. Wall* was on the brief, for petitioner.

*Mr. A. Owsley Stanley* argued the cause, and *Mr. Alexander Simpson* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The respondent, plaintiff below, brought suit in the Circuit Court of Hudson County, New Jersey, to recover under the Federal Employers' Liability Act, for the death of his intestate. Judgment for plaintiff was affirmed by the Court of Errors and Appeals of New Jersey. 105 N. J. L. 466. This Court granted certiorari, 280 U. S.

540, on a petition which asserted as grounds for allowing the writ that the court below had erroneously decided that there was evidence that at the time of the accident deceased was engaged in interstate commerce; that there was evidence of negligence on the part of petitioner; and that deceased's death was not due to his own negligence.

Decedent was employed in the roundhouse of petitioner at New Durham, New Jersey, in which there are thirty-two engine stalls, the doors to which are adjacent to and distant about 68 feet from a turntable. His duty was to fill the grease cups and pack the journal boxes of engines while in the roundhouse for inspection. On the night of the accident his hours of duty were from 7 P. M. to 3 A. M. He had worked on fourteen engines, using tools which were placed on an inspection wagon, which was moved from engine to engine along a concrete runway extending in front of the engine stalls along the outer circumference of the roundhouse. He had lubricated and completed work on Engine No. 3709 on Track 8 before eleven o'clock in the evening. The last engine he worked on was No. 3835, standing on Track 7, adjacent to Track 8 on its left when facing the roundhouse. Fellow workmen, who had finished work on the same engine before the deceased, had been sent to do work outside the roundhouse. At about 2:15 A. M. deceased was instructed by his foreman or gang leader to work on Engine 3835 and when finished to wait for the foreman at the inspection wagon which was then located on the concrete runway in front of the open space lying between Track 7 and Track 8.

There was no eye witness to the accident. At about 2:35 A. M. the decedent's body, with head and one arm severed, was discovered on the right-hand rail of Track 8, adjacent to Track 9, underneath the trucks of the tender of Engine No. 3709, which was then being backed on Track 8 from the roundhouse to the turntable. His cap

was found between the rails of Track 8, about 15 feet outside of the door of the roundhouse. Blood stains were found on or near the right-hand rail of Track 8, beginning about 30 feet from the roundhouse and extending to the point where the body was found, some 60 feet or more from the door of the roundhouse.

The hostler who removed the engine from the roundhouse testified that before moving it he inspected Track 8, that he saw no one on or near the track, that he then mounted the engine, started the air pump, turned on the headlight, rear light and cab lights, started the engine bell ringing and blew three blasts of the whistle as a warning that he was about to back the engine out and as notice to the operator of the turntable. At about 2:30 A. M., some ten minutes after mounting the engine, he backed the engine toward the turntable at the rate of about four miles an hour, looking behind as he did so. The operator of the turntable not responding to the signal, he stopped the engine, blew three more blasts and when the turntable was set he again started the engine and proceeded until decedent's body was discovered.

When backing the engine the tender cut off the view of the track for a distance of about 12 feet from its rear end. The clearance between Engine No. 3709, which killed deceased, and the sides of the door to the roundhouse was about 4 inches, and between it and the engine on Track 7 was variously estimated from about 2 feet to about 3 feet 9 inches. There was much evidence that there was constant blowing of whistles and ringing of bells in the roundhouse in connection with moving the engines and testing their whistles and bells. There was testimony by the hostler, confirmed by his foreman, that just before the movement of the engine in question the foreman cautioned him not to blow the whistle "too loud" because of complaints and warnings by the local police on account of the noise coming from the roundhouse.

Under all the circumstances disclosed by the evidence, it was a permissible inference by the jury that the sounding of whistle and bell, because of the continuous noise of whistles and bells which did not indicate movement of engines, was not sufficient warning that any particular engine was to be moved and that in fact the signal given before moving the engine in question was insufficient for that purpose. In addition, there was testimony that there was a system or custom in the roundhouse of giving warning to the men employed about the engines when they were to be removed from the roundhouse, by posting the time of removal on a blackboard located on the inside of the outer wall of the roundhouse. The time posted for the engine in question was 3 A. M., or a half hour later than the actual time of its removal. There was evidence that the foreman had warned the hostler not to take the engine out " too early." There was also evidence tending to show that the time posted on the blackboard had no reference to the time of removal of the engine from the roundhouse but merely indicated the time at which the engine must be ready for the engine crew on the appropriate siding in the yard beyond the turntable.

But the inference to be drawn from this testimony as to the existence of the custom, its purpose and the reliance which deceased under all the circumstances was entitled to place upon it, was for the jury. We think that there was sufficient evidence of petitioner's negligence to take the case to the jury. Workmen were constantly moving about the engines stalled in the roundhouse. Any movement of an engine without warning was dangerous to life and limb. After the hostler mounted the engine and before it was moved, sufficient time elapsed for the deceased to come into proximity with it which was dangerous if, as the jury might have found, he could not be seen from the engine cab by the

hostler and was not warned of the impending movement. On the evidence it was for the jury to say whether petitioner exercised due care in moving the engine without a more specific and effective warning and whether failure to give it was the cause of the death.

The jury, having found, as it might, that the negligence was the cause of the death, might also have inferred that the deceased was guilty of contributory negligence, but the trial judge correctly charged that under the Federal Employers' Liability Act contributory negligence is not a bar to recovery unless it is the sole cause of the injury or death, and may be taken into consideration by the jury in fixing the amount of damage.

The engine, No. 3835, on which deceased last worked was used in hauling interstate trains. It was not withdrawn from service. See *Walsh* v. *N. Y., N. H. & H. R. R. Co.,* 223 U. S. 1; *Erie Railroad* v. *Szary,* 253 U. S. 86; cf. *Industrial Commission* v. *Davis,* 259 U. S. 182. But petitioner contends that deceased, having finished his work, was no longer employed in interstate commerce. The trial court submitted to the jury the question whether deceased had finished his work on this engine at the time of the accident, and there was some evidence to support a finding that he had not finished it. But if we assume that he had completed the work a few minutes before his death, he was still on duty. His presence on the premises was so closely associated with his employment in interstate commerce as to be an incident of it and to entitle him to the benefit of the Employers' Liability Act. *Erie Railroad* v. *Szary, supra; Erie Railroad Co.* v. *Winfield,* 244 U. S. 170, 173; see *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 260; *Hoyer* v. *Central Railroad Co. of New Jersey,* 255 Fed. 493, 496, 497.

*Affirmed.*