155 So. 568

## SOUTHERN RY. CO. v. CRAWLEY.
### 6 Div. 454.

Supreme Court of Alabama.

April 26, 1934.

Rehearing Denied June 28, 1934.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Ewing, Trawick & Clark and Fred G. Koenig, all of Birmingham, for appellee.

**PER CURIAM.**

In Delaware, Lackawanna & Western Railroad Company v. Koske, 279 U. S. 7, 10, 49 S. Ct. 202, 203, 73 L. Ed. 578, Justice Butler, speaking for the court, observed: "The Federal Employers' Liability Act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured, and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in section 4 of the act [45 USCA § 54], the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees"—citing Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 501, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1917B, 475; St. Louis-San Francisco R. Co. v. Mills, 271 U. S. 344, 46 S. Ct. 520, 70 L. Ed. 979, and Northern Ry. Co. v. Page, 274 U. S. 65, 75, 47 S. Ct. 491, 71 L. Ed. 929.

St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70, and other decisions by this court are to like effect.

Count D of the complaint, on which the case was tried, ascribed the death of plaintiff's intestate to a defect in a "whipping strap" or "telltale" constructed and maintained by the defendant "approximately five hundred and sixty feet from the eastern entrance" of a tunnel at or near Cooks Springs, designed "to give employees of the defendant on trains operated" over its tracks leading through said tunnel "notice of the approach of said tunnel." This count avers "that on said date the defendant negligently caused or negligently allowed said 'whipping strap' or 'telltale' or device to warn employees on said train of the approach to said tunnel, to be defective, so that the same did not, on said date, give the said deceased notice and warning of his approach to said tunnel, and while the deceased, said plaintiff's intestate, *was standing on said train,* or box car, or part of *the coal car of said train,* he was caused to be hit by the top of said tunnel and his skull was fractured and he was caused to be killed. And plaintiff avers that the death of her intestate was proximately caused by the negligence of an agent, servant or employee of the defendant, one I. V. Newsome, who was bridge and building supervisor of the defendant, and that said I. V. Newsome, while acting within the line and scope of his employment as such agent, servant or employee of the defendant, negligently caused or allowed said 'whipping strap' or 'telltale' or device to warn employees on said train of the approach to said tunnel, *to be defective,* so that the same did not, on said date, give the said deceased notice and warning of his approach to said tunnel." (Italics supplied.)

The evidence is without dispute that the plaintiff's intestate, who was on the occasion of his injury and death the front brakeman on one of defendant's freight trains moving from Atlanta, Ga., to Birmingham, Ala., was last seen alive at Pell City, some 6 or 7 miles east of Cooks Springs, where the defendant's tracks led through a tunnel. When the train

reached Brompton, some 7 miles west of the tunnel, where a stop was made to "set off some cars," said intestate did not appear to assist, as his duty required, and a search was made for him and his body discovered on top of the coal in the tender of the locomotive, his head toward the rear of the train. His skull was crushed on top and both arms broken.

The evidence is further without dispute that there are two overhead structures under which trainmen cannot pass standing erect on top of the train between Pell City and Brompton; one is the tunnel, the roof of which is about 4½ feet above the top of the cars, or 17 feet and something over 7 inches above the tracks; that the overhead structure of the bridge is a fraction over 21 feet above the tracks. Both the bridge and tunnel were guarded on each side by "telltales" or "whipping straps." The evidence is further without dispute that the lower ends of the straps or cords of the telltale standing 560 feet east of the tunnel are approximately one foot and five inches higher than the roof of the tunnel. The evidence is further without dispute that the cords of the telltale will strike a person standing on top of the cars or on the coal in the tender, and warn him of the approach to the tunnel. The evidence is further without dispute that a person sitting erect on top of the cars or the coal would pass safely through the tunnel.

The evidence shows that plaintiff's intestate's duties were to stay in front, either on the engine or on the rear of the tender, receive and transmit signals from the rear of the train to the engineer, to throw switches when it was desired for the train to take a siding, to aid in switching and setting off cars, and on trains of the type on which said intestate was working a seat with a cushion was provided for the front brakeman in the cab of the locomotive, and also on the rear of the tender back of the coal.

When the train, after setting off cars at Pell City, moved out, the conductor caught the locomotive and remained in the cab; he last saw plaintiff's intestate on the ground, and whether he boarded the train at or near the tender or further back no one knows. The conductor testified that, as the train approached "Roberts," a mile and one-half east of the tunnel, the engineer blew for the station, and a signal was given from the rear of the train, and passed on from the place of the front brakeman on the rear of the tender by a white light, but he did not see plaintiff's intestate at that time.

Whether the overhead bridge was between Roberts and the tunnel, or west of the tunnel, does not appear.

The evidence further shows, without dispute, that the train blew a signal before entering the tunnel, and that the glare of the headlight disclosed the presence of the tunnel ahead for several hundred feet.

Said intestate was an experienced brakeman, had been in the service of the defendant on this same line for from 28 to 30 years, and was familiar with the situation at this tunnel.

This evidence falls short of showing that the telltale east of the tunnel was defective, or in any way insufficient to properly warn trainmen standing on top of the cars, or the tender, or that the fact that the straps thereon were higher than the roof of the tunnel proximately caused or in any way contributed to the injury and death of plaintiff's intestate. In fact as to how, when, or what caused his death is left by the evidence a matter of conjecture, pure and simple, and, under the established law applicable to the case, the defendant was due the affirmative charge which the court erroneously refused. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Atchison, Topeka & Santa Fé Railway Company v. Toops, Administratrix, 281 U. S. 351, 50 S. Ct. 281, 74 L. Ed. 896; New York Central Railroad Company v. Ambrose, Administratrix, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, BOULDIN, BROWN, and FOSTER, JJ., concur.

THOMAS, Justice (dissenting).

This action was brought under the Federal Employers' Liability Act for injuries sustained by plaintiff's intestate while engaged in interstate commerce. The trial was had on count D.

Count D as amended, upon which the case was submitted to the jury, alleges, in substance, that on August 2, 1931, the defendant was engaged as a common carrier in commerce between the state of Alabama and the state of Georgia, and on said date plaintiff's intestate was employed by the defendant in such interstate commerce, and, while engaged in the duties of his employment in such commerce, namely, riding on a train, or upon a box car of a train, or upon a part of a coal car of a train upon the railroad track of the defendant, at or near Cooks Springs in Ala-

bama, plaintiff's intestate was killed; that the said railroad track ran under or through a tunnel; that plaintiff's intestate was employed by defendant as a brakeman on said train; that in the prosecution of his employment it became the duty of plaintiff's intestate, as such brakeman, to stand up on said train or upon said box car or coal car of said train; that the top of said tunnel was of a height not sufficiently above said track and train to permit persons standing on said train or on the cars of said train to pass through said tunnel without being hit by the top of said tunnel; that at a point approximately 560 feet from the entrance of the tunnel defendant had constructed, and maintained for a long time prior to said date, a whipping strap or telltale, or a device to give employees of the defendant on trains operated over said track notice of the approach to said tunnel; that on said date defendant negligently caused or negligently allowed said whipping strap or telltale or device to warn employees on said train of the approach to said tunnel to be defective so that the same did not, on said date, give said intestate notice of his approach to said tunnel, and, while plaintiff's intestate was standing on said train or box car or part of the coal car of said train, he was caused to be hit by the top of said tunnel and his skull was fractured and he was caused to be killed; that the death of intestate was proximately caused by the negligence of an agent of the defendant in negligently causing or allowing said whipping strap or telltale or device to warn employees on said train of the approach to said tunnel to be defective, so that the same did not, on said date, give said intestate notice and warning of his approach to said tunnel; that plaintiff's intestate was a married man at the time of his death and left surviving him a widow, Lizzie Crawley, who was dependent upon him for support; and that this suit is brought by her as administratrix of the estate of Ernest Crawley, deceased, for the benefit of said wife and dependent of said deceased.

We have indicated that the trial was had on count D of the complaint as amended, the gravamen of which is: "And plaintiff avers that the death of her intestate was proximately caused by the negligence of an agent, servant or employee of the defendant, one I. V. Newsome, who was bridge and building supervisor of the defendant, and that said I. V. Newsome, while acting within the line and scope of his employment as such agent, servant or employee of the defendant, negligently caused or allowed said 'whipping strap' or 'telltale'" not to warn employees on said train of the approach to said tunnel. It is not alleged or declared for negligence in construction or maintenance of the tunnel. It is contended that the evidence afforded reasonable inferences: (1) That the whipping strap or telltale was located too far from the entrance and roof of the tunnel, viz., 560 feet from the tunnel and 19.4 feet above the north rail, and 19 feet from the south rail at a point on a curve to the north; (2) that this warning strap or device was too high above the rail—the distance between the rail and the entrance roof of the tunnel being 17.6 feet—that is, that the strap was 1.8 feet higher than the entrance roof of the tunnel.

There are several propositions of law declared and established by the decisions of the Supreme Court of the United States that are material, and by which we are to be controlled in such a suit. The location of the telltale and its general characteristics are primarily questions in which the judgment of the defendant company cannot be subjected, and which cannot be submitted to the varying judgments of courts and juries (Delaware, Lackawanna & Western Railroad Company v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; Toledo, St. Louis & Western Railroad Company v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513), provided such company, in so doing, observes the rule of ordinary care, and is not guilty of any breach of duty owed to the employee (plaintiff's intestate) in respect to the method employed or the condition of time, place, and particular circumstances of the use and purpose. Nelson v. Southern Railway Company, 246 U. S. 253, 38 S. Ct. 233, 62 L. Ed. 699; Missouri Pacific Railroad Company v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; Delaware, Lackawanna & Western Railroad Company v. Koske, supra; Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231.

It should be said that the installation and maintenance by the defendant of such device as alleged in the complaint imposed the duty of due care as to its efficiency for the purpose for which it was installed, and the employee affected thereby had the right to rely thereon, in the absence of notice of its defect, failure, or inefficiency, and lack of appreciation of the danger caused thereby. Washington Railway & Electric Co. v. Scala, Admr'x, 244 U. S. 630, 37 S. Ct. 654, 61 L. Ed. 1360; Gila Valley, Globe & Northern Railway Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Birmingham Belt R. Co. v. Bennett, 226 Ala. 185, 146 So. 265; Birmingham Southern R.

Co. v. Harrison, 203 Ala. 284, 285, 82 So. 534; Louisville & N. R. Co. v. Clark, 205 Ala. 152, 87 So. 676, 14 A. L. R. 695.

An employee is not required to exercise care to discover danger not ordinarily, naturally, and reasonably incident to and inherent in the duties of the employment in which he is engaged, when his danger is but the result of the employer's or other employees' negligence causing the injury (Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231; Louisville & N. R. Co. v. Porter, 205 Ala. 131, 87 So. 288), and where it was not his duty to inspect (Gila Valley, Globe & Northern Railway Co. v. Hall, supra).

In such an action contributory negligence is not a bar to recovery, *unless it is the sole cause of the injury or death.* Louisville & N. R. Co. v. Parker, supra; New York Central Railroad Company v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892; Federal Employers' Liability Act (45 USCA §§ 51–59).

In order to charge an employee with assumption of risk attributable to a defect due to the employer's lack of due care and negligence, at a given moment and place, and under certain circumstances, it must be shown that such injured employee (1) not only knew of the defect, (2) but that he knew that it endangered his safety, (3) or else that such danger was so obvious that an ordinarily prudent person so situated and so informed under the circumstances would have had knowledge or been warned and appreciated that danger. Gila Valley, Globe & Northern Railway Co. v. Hall, 232 U. S. 94, 100, 101, 34 S. Ct. 229, 58 L. Ed. 521; Louisville & N. R. Co. v. Parker, 223 Ala. 628, 638, 138 So. 231. That is, the Supreme Court of the United States has declared that mere proof that an intestate employee knew of the defect in the appliance, or place of work, *without more*, is not, as a matter of law, sufficient to charge such employee with assuming the risk of injury resulting therefrom or therein. He must appreciate the danger thereby—from such known defect or condition, or the lack of due care for his protection in the prosecution of his duties. Gila Valley, Globe & Northern Railway Co. v. Hall, supra; Chesapeake & Ohio Railway Company v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016–1020; Central of Georgia R. Co. v. Davis (C. C. A.) 7 F.(2d) 269; Louisville & N. R. Co. v. Parker, supra.

The evidence shows that, because of the defective condition, by way of the height of the telltale being about 1.8 feet higher than the roof of the tunnel and the great distance between the telltale and the mouth of the tunnel, intestate, standing or walking on top of the coal car in the discharge of the duties of his employment, was not given due notice of the approach of the train to the tunnel; that is, when all the circumstances of intestate's death, and those immediately preceding the same, are considered, the evidence is open to reasonable inferences making a jury question.

The testimony of the fireman (Whitley) on said train, and that of the conductor (Liner) in charge thereof, when considered with the photographs, drawings, and testimony of the civil engineer (Sartain) and that of other witnesses, forbids the giving of affirmative instruction as requested by the defendant, furnishing, as it does, data from which the jury were justified in finding that the deceased was standing on top of the coal in the tender when the train passed the telltale and entered the tunnel, striking the head of the decedent on the entrance thereof, causing his death.

From the top of the coal in the tender to the top of the roof of the tunnel the distance was 4½ or 5 feet. The roof was 1.8 feet lower than the lowest part of the telltale. Intestate was about 5½ feet tall. It is obvious, or a reasonable inference, that deceased, proceeding over and standing on top of the coal, would not be touched by the telltale, and therefore would receive no warning therefrom; that so standing on the coal his head come in contact with the roof of the tunnel as the train proceeded, which it did, and his head was crushed. There is nothing to indicate that he met his death in any other way. There was no evidence that he knew the telltale was higher than the roof of the tunnel; there was evidence by the witness Whitley, who had worked for the defendant on said line for about fifteen years, that he *did not know anything about the respective heights of the telltale and the roof of the tunnel, and that he had received no notice from the defendant that the telltale was higher in the air than the roof of the tunnel.*

The mere fact that the train approached this tunnel through a cut did not signify the approach to a tunnel. There was evidence that by the headlight one could see the tunnel, but there was evidence that, standing where intestate undoubtedly was standing (or so inferred by the jury to be standing), the smokestack and smoke would interfere with his vision to the front of the train. These questions were for the jury's consideration on the question of contributory negligence only, which would not bar recovery, but would be considered in mitigation of damages; that is, under the federal rule and

act to the effect that contributory negligence is not a bar to recovery unless it be the sole cause of injury or death. Federal Employers' Liability Act (45 USCA §§ 51–59); New York Central Railroad Co. v. Marcone, Adm'r, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892; Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231.

It cannot be said, as a matter of law, that plaintiff's intestate assumed the risk of injury on account of the height and location of the telltale. The facts and circumstances described by the evidence, and the reasonable inferences to be drawn therefrom, presented that question for the jury. And, in the absence of evidence that he knew the telltale was higher than the roof of the tunnel, the burden in that respect was upon the defendant. The tendency of conflict making a jury question was that he had worked on trains traveling those tracks for several years before he sustained his fatal injuries; knew the location of the tunnel; and no doubt had seen the telltale. *But there is nothing in the record indicating that he knew the lowest part of the telltale was approximately 2 feet higher than the roof of the tunnel*, and that he knew and appreciated the danger of going over that coal pile. To the contrary, another employee, on the same line for fifteen years, testified he did not know about the respective heights of the telltale and the roof of the tunnel. If this witness, who had passed the place repeatedly on board trains during the fifteen years of his service, did not know that the lowest point of the telltale was higher than the roof of the tunnel, is it not reasonable to presume, or open to inference by the jury, that intestate did not know this material fact to be a defect, and, if known, did not appreciate its danger? In this, the burden was upon defendant to reasonably satisfy the jury from the evidence, not only that plaintiff *had knowledge of the defective condition of the telltale, but that he also appreciated the danger. The jury had the right to infer that this was a defective condition of the telltale that was due to the negligence of the defendant*, and that it presented a danger not ordinarily, naturally, and reasonably incident to the employment in which intestate was engaged and injured; that is, that the danger was extraordinary and not reasonably to be known and appreciated, and with which intestate was chargeable.

An employee assumes a risk of injury from a defective condition brought about by the negligence of his master *only when it is shown that he not only knew of the defective condition, but appreciated the danger arising therefrom.* Texas & Pacific Railway Company v. Swearingen, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382; Gila Valley, Globe & Northern Railway Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Chesapeake & Ohio Railway Company v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Central of Georgia R. Co. v. Davis (C. C. A.) 7 F.(2d) 269; Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231.

It may be further observed that the Alabama scintilla rule of evidence does not apply (Louisville & N. R. Co. v. Parker, supra; Western & Atlantic Railroad Company v. Hughes, Admr'x, 278 U. S. 496, 49 S. Ct. 231, 73 L. Ed. 473); and a fact resting in inference cannot be predicated upon another inference (Goslin-Birmingham Mfg. Co. v. Gantt, 222 Ala. 321, 131 So. 905; Atlantic Coast Line R. Co. v. R. L. Cooper Lumber Co., 219 Ala. 484, 122 So. 661). Such is not the case made by the evidence. The last time plaintiff's intestate was seen, he was east of the telltale as the train proceeded west towards Birmingham, and in the discharge of his duty.

After all that may be said, the mere fact that intestate knew the location of the telltale and of the tunnel *would not, as a matter of law, charge him with knowledge of the defective condition of the telltale and the danger arising therefrom* and from the approaching train loaded as it was; and said danger due to the telltale being higher than the roof of the tunnel. It was for the jury to determine, from a consideration of all the facts and circumstances, whether plaintiff had actual knowledge of said defective condition of the telltale and appreciated the danger, or whether the nature and character of the defect and danger were so obvious that a reasonable person engaged in that business and service would naturally know such condition, risk, and danger existed, and would be charged with exercising ordinary care in the discharge of his duties under such conditions. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 634, 138 So. 231.

In consideration of the foregoing, we are of opinion that the trial court committed no error in refusing the general affirmative charge. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

Based upon the facts and circumstances revealed by the evidence, and inferences to be drawn therefrom, the plaintiff's counsel said in argument:

" 'The conductor was up there not in his cab. The conductor was up there on the en-

gine and during that time Ernest Crawley, in order to help his employers, in order to do that which he thought was right as a faithful and trustworthy employee of the Southern Railway Company, in order to speed up the travel, in order to carry that freight in a proper and speedy manner, in order that there would be no delay at Brompton, he gets up and goes from that place where he was and goes to the conductor in the cab to find out in ample time to do what was to do at Brompton.'

"Thereupon counsel for the defendant interposed: 'We object to that statement that he got up there (to) see the conductor to see what was to do at Brompton.'

"Whereupon the Court made the following statement: 'Well, Gentlemen of the jury, it is easy enough to say that the lawyers have a right to argue the evidence and what reasonably may be inferred from the evidence. They have no right to argue anything that is not supported by the evidence and a reasonable inference from the evidence, and with that explanation I will overrule the objection. If he argues something that there is no reasonable inference that can be drawn from the evidence, why then you will not consider it.'

"Whereupon counsel for the defendant reserved an exception to the ruling of the Court."

That the preceding statement or argument of plaintiff's counsel, which is not before the court, illustrated and entered into the ruling made, is shown by the statement of the trial judge who heard all that opposing counsel said just prior to the objection. It was evident to the judge so ruling, or it was his opinion, that from what had been said by the attorney, and what he was saying at the time, to which objection was taken, plaintiff's counsel was merely stating in argument his conclusions and inferences from the evidence.

There was no error in overruling objections of defendant to questions materially and reasonably tending to show the relative distances and heights of the tunnel, the coal in the car, the height of intestate, the position of decedent's body, the nature and location of his injury, that of the construction of the roof of the tunnel and the telltale. The witnesses were familiar with the facts and were properly allowed to state the same.

It was likewise competent for the widow and dependent of intestate to state what disposition intestate made of his moneys; as, spent for her comfort and maintenance.

There was no error in allowing evidence by an expert actuary who had made calculations and determined the present value of decedent's income and annuity for a period of years, as shown by the evidence. Louisville & N. R. Co. v. Parker, supra; Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 560, 122 So. 686.

The argument of counsel, to which objection was made by defendant, was within the inferences of fact, and not erroneous.

Charges 17 and 18 requested by defendant were properly refused as invading the province of the jury.

Charge 8 was properly refused as invading the province of the jury. The charge failed to hypothesize the like conditions or circumstances of the coal car on which plaintiff's intestate was standing when stricken. It cannot be said, as a matter of law, that intestate assumed the risk of injury for a defective telltale not the result of his own act or failure to keep effective or in condition. The semaphore case properly installed, Atlantic Coast Line Railroad Company v. Powe, Adm'r, 283 U. S. 401, 51 S. Ct. 498, 75 L. Ed. 1142; and those touching the proper installation of mail cranes, Chesapeake & Ohio Railway Company v. Leitch, 276 U. S. 429, 48 S. Ct. 336, 72 L. Ed. 638; Southern Pacific Company v. W. S. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, are without application.

I cannot say that it rests in mere conjecture whether the death of the servant resulted from the negligence of which the master was liable or from other causes. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70.

I therefore respectfully dissent.

KNIGHT, J., concurs in the foregoing dissent.