Charles A. Hart, of Portland, Or., J. W. Quick, of Tacoma, Wash., and Fletcher Rockwood and Carey, Hart, Spencer & McCulloch, all of Portland, Or., for appellant.

Harry Ellsworth Foster, of Olympia, Wash., and Wm. P. Lord, of Portland, Or., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This case is before us upon appeal from a judgment rendered in an action for damages brought by appellee, as plaintiff, against appellant. The action was brought in the District Court of the United States under the Federal Employers' Liability Act (45 U.S.C., §§ 51–59 (45 U.S.C.A. §§ 51–59), which relates to injuries to employees of common carriers engaged in interstate commerce.

Appellee was employed as a laborer in the shops of appellant. On April 22, 1932, he and several other workmen were engaged in moving a pair of locomotive trailer wheels from the locomotive pit in the roundhouse to the machine shop. These wheels weighed over 4,000 pounds, and, after removal from the engine, were rolled upon a skeleton truck constructed of channel iron and built very low to the ground. This truck was about 7 feet in length and moved on four small iron wheels; the rear wheels rotated on an axle which ran through the sides of the

## SPOKANE, P. & S. RY. CO. v. MARTIN.

### No. 7745.

Circuit Court of Appeals, Ninth Circuit.

Dec. 2, 1935.

channel and the front wheels revolved between the arms of a swivel yoke, to which a tongue was attached for use in turning. The front assembly was attached to the truck proper by means of a "T" section piece of iron, bent to the shape of a "goose neck" and welded to the front end of the channel iron. According to the testimony, the body of the truck had a clearance of about 1 or 1½ inches when unloaded, and one-half inch or less when loaded. The floor of the roundhouse was constructed of 4 x 12 inch planks. By reason of the rough usage to which it was subjected, the floor was quite worn and rough in spots; knots and spike heads were raised above the surface by reason of the flooring around them having been worn away.

On the day on which the accident occurred, while these locomotive wheels loaded on this truck were being moved over this plank floor, the truck became stalled on one of the raised portions of the floor and stopped. Plaintiff testified that he was ordered by the foreman, who was supervising the job, to procure a bar and to pry under the forward of the pair of wheels riding on the truck, the object being, we take it, to lift some of the weight off the truck and also to move it forward through the medium of the leverage obtained. The bar twice slipped, but on the third effort the truck moved forward, suddenly and unexpectedly, for about 3 feet. In his final effort Martin stood with his back to the axle of the pair of wheels, his feet spread apart somewhat, with his right foot to the rear. As the truck moved forward, Martin was thrown to the floor and his right leg was struck just above the ankle, by the flange of the wheel, twisting his leg and injuring his lower back. Several other laborers were also assisting in this job, some of whom, at least, were pushing the truck at the very moment of the accident. Immediately ahead of where the truck became stalled was a slight depression and slant to the floor, leading down to the track which led to the machine room. According to the testimony, this track was about one-half inch lower than the floor proper and the slope was about 2½ or 3 feet in length.

Appellant's first point challenges the jurisdiction of the court, based upon the contention that appellee, at the time of the accident, was not engaged in interstate commerce. Appellee brought his action under the Federal Employers' Liability Act, and it is his contention that the locomotive being repaired was an instrumentality devoted exclusively to interstate commerce, and, therefore, appellee's work was interstate in character, bringing him within the terms of the Federal Employers' Liability Act.

It was stipulated that Locomotive No. 622, from which the wheels involved in the accident were being transported, was of a type suitable for use on passenger trains; that the last haul made, prior to being removed from service for repairs, was an interstate haul; that said locomotive was placed in the roundhouse at 7:15 a. m., April 16, 1932; that it was again placed in service at 7:05 a. m., April 23, 1932, and used in an interstate haul; that the locomotive was continuously in the roundhouse from 7:15 a. m., April 16, to 7:05 a. m., April 23, 1932; that at the time of the removal of the trailer wheels in which plaintiff was assisting, the locomotive was not in condition for use in any transportation service.

■ If the work in which Martin was engaged at the time of his injury can be classed as interstate in character, the District Court had jurisdiction of the cause, otherwise, not. The Supreme Court of the United States, in Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 189, 60 L.Ed. 436, L.R.A. 1916C, 797, stated the rule as follows: "The true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it." Before this decision the Supreme Court, in New York Cent. & H. R. R. Co. v. Carr, 238 U. S. 260, 263, 264, 35 S.Ct. 780, 781, 59 L.Ed. 1298, said: "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

In Hallstein v. Pennsylvania R. Co., 30 F.(2d) 594, 595 (C.C.A.6), the court said: "The general rule unquestionably is that, for the Federal Employers' Liability Act to apply and the jurisdiction of the federal courts to thereby attach, not only must the employer be engaged in interstate commerce but the employee at the time

of the injury must likewise be engaged in interstate transportation or in work so closely related to it as to be practically a part of it. * * * Where work is being done by an employee upon or directly in connection with an instrumentality which itself is being used in interstate commerce *and not withdrawn therefrom,* such as tracks, bridges, water tanks and pumps connected therewith, locomotives or cars embarked or immediately about to embark upon such commerce, or undergoing running repairs, etc., the employee has been held to have been engaged in interstate commerce. * * *

"On the other hand, where the instrumentality upon which the employee is at work or in connection with which he is engaged is not directly connected with interstate transportation, *or where such instrumentality has been withdrawn from* or not yet dedicated to use in such commerce, although it may last have been so used or be intended ultimately for such use, it has repeatedly been held that the work was not so closely related to interstate commerce as to be practically a part of it." (Italics inserted.)

Again, in Chesapeake & O. Ry. Co. v. Mizelle, 136 Va. 237, 118 S.E. 241, 244, it was said: "Work upon an engine which is temporarily held either upon a track or in a shop while the train which it has been drawing is also held until such engine can be repaired, so that both can continue the journey, is so directly connected with transportation in commerce as to come within the meaning of the acts. An instrumentality of commerce, however, like an engine, which has been withdrawn from service for an indefinite time, until it can be repaired and thereafter again devoted to such transportation service, is like an engine in the shop of its original builder, which, though intended for, has not yet been devoted to, transportation service."

The engine in this case was unquestionably withdrawn from service; it was not then engaged in any kind of service, whether inter or intra state. It was then incapable of locomotion and was not in condition for use in any transportation service. See Chicago, R. I. & P. Ry. Co. v. Cronin, 74 Okl. 38, 176 P. 919, 920. "It was not interrupted in an interstate haul to be repaired and go on." Minneapolis & St. Louis R. Co. v. Winters, 242 U.S. 353, 356, 37 S.Ct. 170, 171, 61 L.Ed.

358, Ann.Cas. 1918B, 54. It was said in Conklin v. New York Cent. R. Co., 206 App.Div. 524, 202 N.Y.S. 75, 76, in reversing a judgment for plaintiff who was injured while repairing a locomotive in defendant's roundhouse: "It was withdrawn from service, placed in the roundhouse repair shop, and remained there five days. *The necessity for repairs did not arise from a cause which interrupted a run.* The repairs consisted in replacing worn tires." (Italics inserted.)

The engine had been used indiscriminately in inter and intra state traffic, and the last trip before being placed in the roundhouse was on an interstate haul. The Supreme Court of the United States said, in Industrial Accident Commission v. Davis, 259 U.S. 182, 187, 42 S.Ct. 489, 491, 66 L.Ed. 888: "But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse —the interruption of actual use, and the return to it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a work shop, its employments and employees having cause in the movements that constitute commerce but not being immediate to it."

We see no way of avoiding the application of the decision of the Supreme Court in New York, New Haven & Hartford Railroad Co. v. Bezue, 284 U.S. 415, 52 S.Ct. 205, 206, 76 L.Ed. 370, 77 A.L.R. 1370, a case very similar to the one at bar. The employee in that case was a laborer in the railroad's roundhouse and repair shop and was injured through the negligence of the foreman while assisting in returning a pair of main driving wheels from a lathe to the engine from which they had been removed for the purpose of turning the journals. The locomotive had apparently been used in interstate service and had been brought to the shop for regular boiler wash. Preparatory to giving the engine this boiler wash, an inspection was made and certain repairs ordered. "The fire was dumped, the main driving wheels and other portions needing attention were removed, and the engine was left inert and incapable of locomotion. The

boiler wash and repairs consumed twelve days." Bezue was injured on the ninth day. The suit for damages was brought by Bezue against the railroad company in the state court in New York and judgment had in his favor on the ground "that the terminal facilities in which respondent worked constitute a part of the railroad's system necessary to the operation of the road and to the conduct of interstate commerce." The Supreme Court held (284 U.S. 415, page 420, 52 S.Ct. 205, 207, 76 L.Ed. 370, 77 A.L.R. 1370): "The criterion of applicability of the statute is the employee's occupation at the time of his injury in interstate transportation or work so closely related thereto as to be practically a part of it. * * * Under the circumstances of this case, whether respondent is within the act must be decided, not by reference to the kind of plant in which he worked, or the character of labor he usually performed, but by determining whether the locomotive in question was, at the time of the accident, in use in interstate transportation or had been taken out of it. The length of the period during which the locomotive was withdrawn from service and the extent of the repairs bring the case within the principle announced in Industrial Accident Commission v. Davis, supra, and Minneapolis & St. Louis R. Co. v. Winters, 242 U.S. 353, 37 S.Ct. 170, 61 L.Ed. 358, Ann.Cas. 1918B, 54, stamp the engine as no longer an instrumentality of or intimately connected with interstate activity, and distinguish such cases as New York Cent. R. Co. v. Marcone, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892, where the injured employee was oiling a locomotive which had shortly before entered the roundhouse after completing an interstate run."

We have carefully examined the cases cited by appellee. The cases from the various state courts, while persuasive, are not binding upon us, especially in the face of the decisions cited above. Northern Pacific Ry. Co. v. Maerkl, 198 F. 1, decided by this court in 1912, went off on the theory that because the car had been used in interstate commerce, it acquired an interstate character, which brought those working upon it within the act, whether the car was then in use or not. The case of Law v. Illinois Cent. R. Co. et al. (C.C.A. 6) 208 F. 869, was decided with the same reasoning and on the authority of the Maerkl Case, supra, and, as pointed out,

these cases have been modified by later decisions of the Supreme Court, which now favors the actual use and withdrawal from service doctrine. Likewise, New York Cent. R. Co. v. Marcone, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892, was distinguished by the Supreme Court in the Bezue Case, supra, because the locomotive in that case had shortly before the accident entered the roundhouse for oiling after completing an interstate run. .

Under the more recent pronouncements of the Supreme Court, we must hold that the District Court was without jurisdiction. The judgment is reversed.