## FLUITT v. NEW ORLEANS, T. & M. RY. CO.

### No. 1620.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

C. V. Pattison and S. W. Plauche, both of Lake Charles, for appellant.

Frank E. Powell, of De Ridder, for appellee.

OTT, Judge.

Plaintiff filed this suit against the New Orleans, Texas & Mexico Railway Company to recover compensation under the Workmen's Compensation Law of this state (Act No. 20 of 1914, as amended) on account of an injury received by him on May 22, 1933.

He alleges that he was receiving $5.28 per day, working six days per week, and he asks for $8,000, payable in weekly installments of $20 each, together with interest on each installment as it matures, and the additional sum of $250 for medical expenses incurred by him on account of said injury.

He avers that his duties were to operate a portable electric crane in the roundhouse of the defendant railroad at De Quincy, La., in connection with which employment he was required to remove heavy objects with said crane about the roundhouse and sometimes about the shop yards; that on the day of the injury plaintiff was instructed to take said crane and pick up an engine tire, weighing about 400 pounds, and bring the tire over and put it down by an engine which was then in the shop for repairs; that, while he was backing said crane out of the roundhouse to get the tire, the crane was struck by a car being pushed through the yards by a locomotive and he was caught between the said car and crane, crushing his body to such an extent that he is totally and permanently disabled to perform work of any reasonable character. He further alleges that the locomotive to which he was instructed to bring the tire was in the shops for repair and was out of service at that time.

By a supplemental petition, plaintiff joined L. W. Baldwin and Guy A. Thompson, trustees appointed by the United States Court for the Eastern District of Missouri, to operate said railroad, and he made the same allegations against these trustees as he had made against the railway company, and prayed for judgment in the same amount against the trustees as against the railroad. On an exception being filed by the railroad company on the ground that it was not operating said railroad when the injury occurred, but that same was being operated by said trustees, the court dismissed the case as to the railway company. As no appeal was taken from that judgment of dismissal, we will only consider the pleadings and facts as they apply to the trustees.

The trustees answered, admitting that they were operating said railroad when plaintiff was injured; they admit that plaintiff was in their employ at the time, and that he was instructed to bring a tire to the locomotive with the electric crane; they also admit that the locomotive to which plaintiff was instructed to bring the tire was in the shop for repairs; they admit that plaintiff received an injury while backing out the said crane, but allege that the injury was caused by his own negligence.

The trustees set up as a special defense that, at the time of the accident, the locomotive to which plaintiff had been instructed to bring said tire was an instrumentality of interstate commerce; that said locomotive was being used exclusively in interstate passenger service on said railroad between Anchorage, La., and Houston, Tex.; that at the time of the accident the said locomotive was in the shop for regular monthly inspection and such running repairs as were necessary; that said locomotive had been put in the shop on May 21, 1933, at the end of a passenger run between the above two points and was destined to return to said service upon completion of

said inspection and repairs, and was actually returned to said service on May 23, 1933, the day after the accident. The trustees therefore contend that plaintiff's claim is controlled by the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59) instead of the Louisiana Workmen's Compensation Law.

The district judge reached the conclusion that plaintiff's claim is controlled by the federal law and therefore rejected his claim for compensation under the laws of this state. Plaintiff has appealed.

There is little dispute as to the facts on this phase of the case. We find the facts to be about as summarized above from the special defense of the trustees. We find the following admission made by counsel for plaintiff in the record:

"We will admit that engine 387 was a passenger engine, and was engaged in making interstate runs up to May 21, 1933, when it was put in the round house."

"We will admit when it was put back in use it went back into the passenger service on regular passenger runs, and that when it went into the round house, it was destined to return to the same service, after it was inspected and certified for service."

The trial judge makes the following statement as to the facts in his reasons for judgment: "On May 22, 1934, plaintiff was instructed to pick up with his crane an engine tire, and carry it to an engine which was in the shop for regular monthly inspection and whatever repairs were needed. While performing this duty, the crane operated by the plaintiff was struck by a car being pushed through the yard by a locomotive, and plaintiff was crushed between the car and the crane. The locomotive to which the plaintiff was carrying the tire was used by the trustees in interstate commerce, and it was taken into the shop in DeQuincy at noon on May 21, 1934, at the end of an interstate run, and it went out on an interstate run—as it was destined to when its inspection and repairs had been completed—at 4:30 P. M. on May 23, 1934. The engine in question was a passenger engine, and all passenger trains of the defendant were engaged in interstate commerce." (Should be 1933 instead of 1934.)

We do not find any testimony in the record to support the finding that the crane was struck by a car being pushed through the yards by a locomotive; however, as defendants admit the injury, the exact manner in which it occurred is not material.

To this admission of plaintiff's counsel and the statement of the trial judge, we may add that the testimony shows that, under the regulations of the Interstate Commerce Commission, a locomotive in service must be inspected at least once every month and proper reports made of such inspection; that these inspections should be made while the locomotive is out of service for inspection. The facts further show that the fire is drawn out and the boiler allowed to cool in order that it may be inspected; this cooling takes almost a day. The locomotive involved in this case needed no other repairs than replacing a driving tire on one of the wheels. This ordinarily would not take over two hours. The locomotive was in the shop for inspection and this repair work from noon May 21 to about 4:30 p. m. May 23—2 days and 4½ hours. Allowing for the cooling of the engine, inspection of the boiler and engine, and making these repairs, the time in which the locomotive was out of service is not unusual.

Section 30 of Act No. 20 of 1914, as amended by Act No. 244 of 1920, § 1, precludes recovery of compensation under the State Employers' Liability Law by an employee of a railroad in this state where the nature of the work being performed by the employee at the time of the injury is of such a nature as to bring his claim within the provisions of the Federal Employers' Liability Act. The question therefore arises at the threshold of this case: Was plaintiff at the time of his injury engaged in work of such a nature as to bring his claim within the Federal Employers' Liability Act?

The question of whether or not an injured employee was engaged in interstate commerce at the time of the injury has been the source of prolific litigation resulting in rather closely discriminating and somewhat conflicting decisions. We have been cited to numerous decisions by able counsel on both sides. After a careful review of these cases, together with others which have come to our attention in the course of the examination, we will cite only those which we consider most relevant to this case.

The rules of interpretation vary somewhat in accordance with the particular kind of work that the employee is performing at the time of the injury; i. e., whether

constructing and maintaining the road bed, constructing and repairing buildings, bridges, and equipment, operating trains, or repairing rolling stock.

■ The most frequently applied rule in cases of this kind is that announced by the United States Supreme Court in the case of Shanks v. Delaware, L. & W. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436, L.R.A.1916C, 797, where it is said that the main inquiry is whether or not the employee at the time of the injury was engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it.

■ Where a railroad employee is injured in connection with the repair of a car or locomotive, in order to bring his claim within the Federal Employers' Liability Law, the following three conditions must exist: First, the car or locomotive on which he is working when injured must be engaged in interstate transportation, and, as soon as the repairs are completed, such car or locomotive must be destined to return to such interstate service; second, the time of making the inspection and repairs must be of such reasonable duration that it may be said that said car or locomotive was merely interrupted in its interstate service, or, in other words, just temporarily out of such service for necessary inspection and running or minor repairs; third, the nature and extent of the repairs must be of such a nature as not to require the dismantling and overhauling of said car or locomotive so as to practically disconnect it from service.

We have undertaken the above statement of the principle after a careful review and analysis of a large number of the reported cases on this point, particularly the following cases: Industrial Accident Commission et al. v. Davis, 259 U.S. 182, 42 S.Ct. 489, 66 L.Ed. 888; Minneapolis & St. Louis R. Co. v. Winters, 242 U.S. 353, 37 S.Ct. 170, 61 L.Ed. 358, Ann.Cas.1918B, 54; New York Central R. Co. v. Marcone, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892; Oglesby v. St. Louis-San Francisco R. Co., 318 Mo. 79, 1 S.W.(2d) 172, certiorari denied 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001; McMahen v. Missouri Pacific R. Co., 186 Ark. 399, 53 S.W.(2d) 998; Harlan v. Wabash Ry. Co., 335 Mo. 414, 73 S.W.(2d) 749.

A full review of the cases on this point will be found in 10 A.L.R. at page 1204, and supplemented in that work down to the more recent volumes. We quote the following from a note in 24 A.L.R. at page 636: "At the time of the publication of the former annotations, the rule was that the making of such repairs on rolling stock as could be made without materially interrupting the journey on which it had entered was within the Federal statute, but that more permanent repairs within shop or roundhouse were not within the Federal statute if the engine or car under repair was used indiscriminately in interstate and intrastate work, and its use after repair was not definitely designated, so that it was impossible to know to which branch of traffic it would be devoted. Since the publication of the former annotations, a rule which is more definite, and therefore more capable of application, seems to be gradually appearing. That is, that if the repairs are of such character that the engine or car upon which they are made must be definitely withdrawn from all traffic while they are in progress, so that for the time being it is like the buildings or other property of the company not actually used in transportation, the work is not within the protection of the Federal act."

■ Applying the rule which we have deduced from the authorities to the present case, we have no difficulty in reaching the conclusion that the locomotive to which plaintiff was preparing to bring the tire when injured was an instrumentality of interstate commerce. It was admittedly used exclusively in interstate transportation and was destined to return to such service as soon as the inspection and repairs were made, and actually returned to such service; the locomotive was in the shop only slightly over 2 days; the inspection was one required of all locomotives every 30 days; and the repairs were what are termed running repairs.

The contention is made that, even though the locomotive was an instrumentality of interstate commerce, plaintiff was not, when injured, working on or repairing the locomotive, but was merely getting the crane in position to bring the tire alongside the locomotive, which duty, after being accomplished, would have finished his work in that connection. However, the work which he was performing when injured was in relation to, and in furtherance of, the repair of the locomotive. The nature of his employment at the time had relation only to the repair of this interstate instrumentality.

In the case of Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 650, 57 L.Ed. 1125, Ann.Cas.1914C, 153, the employee was injured while carrying bolts and rivets to be used in the repair of a railroad bridge, an instrumentality of interstate commerce; the United States Supreme Court, in passing on a similar contention, said: "The point is made that the plaintiff was not, at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work."

The trial judge was correct in reaching the conclusion that plaintiff's claim is controlled by the federal law and not by the Louisiana Compensation Act.

For the reasons assigned, the judgment is affirmed.