## PATENTS, Inc., v. GILLETTE SAFETY RAZOR CO.

No. 7308.

Circuit Court of Appeals, Third Circuit.

Oct. 25, 1940.

Rehearing Denied Nov. 15, 1940.

Richards, Layton & Finger, of Wilmington, Del. (Theodore S. Kenyon and Frederick Bachman, both of New York City, of counsel), for appellant.

Henry R. Ashton and William J. Barnes, both of New York City (Herbert L. Cohen, of Wilmington, Del., of counsel), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a decree dismissing a bill in a patent infringement suit. The patent in question is Swan Patent No. 2,046,219 issued June 30, 1936 relating to safety razors. The defendant denied the validity of the patent and the infringement.

The litigation arises out of defendant's attempted solution of a difficulty which had been a source of trouble to both the manufacturers and users of Gillette razors. Injury to the corners of the cap of the old-fashioned type of Gillette razor, caused by dropping or other type of blow, resulted in destroying the proper alignment of the blade in the holder. This, of course, interfered with the efficiency of the instrument in shaving to the dissatisfaction of the user and eventually loss to the maker. The problem was met by the Gillette Safety Razor Co. through its chief engineer, Mr. Thompson, by the reenforcement of the corners of the cap of the razor and the creation of a blade with the corners so clipped or recessed that the cap extended beyond the corners of the blade. The essential improvement was the spanning of the recesses in the blade. Even a considerable blow would not, if the blade was not flush with the corner of the cap, seriously interfere with the proper operation of this razor. The extra lugs at the corners were valuable only in strengthening the frame against injury through dropping or other accident to it. This improvement was devised in 1929 and the defendant in 1930 announced a new razor manufactured in accordance with the above changes.

Meanwhile, plaintiff's assignor, Swan, had developed in England a safety razor and had had models made there. He came

to this country in 1927 and disclosed his invention to Mr. Fuller, director of the defendant corporation, and to Mr. Thompson, its chief engineer. As described in the British application [1] Mr. Swan's invention related to "an improved safety razor and has for its object to provide an arrangement and construction of safety razor of the type employing a series of rollers to act as a guard and guide the direction of movement of the razor." These wheels or rollers were set at an angle both to the plane of the blade and to the cutting edge of the blade. This of course left the sharp corners of the blade unprotected. The British specification went on to say:

"Guards may be provided at each corner of the blade so as to prevent any risk of the corner of the blade catching in the skin. Such guards may comprise lateral projections at the ends of each side of the upper plate or platform which projections extend substantially level with or slightly beyond the edge of the blade and are located at the corners thereof. Other forms of guard may, however, be combined with the cover plate which clamps the razor blade upon the platform or in any other desired manner.

\* \* \*

"If desired this cover plate may have projections at each corner extending sufficiently to act as a protection for the corners of the blade either in addition to or instead of similar projections arranged upon the platform upon which the blade is supported.

\* \* \*

"If desired suitable recesses may be provided in each corner of the blade so as to permit the projecting corner guards to engage therein so as to more effectively screen the corners of the blade without obstructing its use during shaving."

The application for the patent in suit was filed in October, 1930. Interference claims between Gillette and Swan resulted and claims 2, 3, 4 and 5 of the Swan patent were in issue. The Court of Customs and Patent Appeals decided in favor of Swan on those claims. Swan v. Thompson, 1936, 80 F.2d 374. Thereafter the Swan patent was granted on June 30, 1936. The present suit involves claims 2, 3, 4 and 7.

The plaintiff says that the real subject-matter of his claims, read in the light of the patent disclosure, is as follows:

"First, as defined in claim 4, the combination of a cut-out corner blade with a Gillette type razor having cap side edges substantially longer than the cutting edges of the blade, so that, in combination, the cap corners overhang the cut-out blade corners with substantial clearance, and the cutting edges are thereby protected from distortion by the bent cap corners,—with the addition of corner lugs 'spanned with clearance' in claim 7.

"Second, as defined in claim 3, the combination of a cut-out corner blade with a Gillette type razor having fulcrum edges or shoulders so placed on the guard that, in combination, the inner corners of the blade notches are aligned with the fulcrum edges, to avoid the twisting of the metal that would occur if these elements were not in alignment,—with the addition of corner projections in claim 2."

The plaintiff, it is to be noted, relies upon two features; one is the blade with the cut-out corners. The other is the spanning of those corners by the cap. The Second Circuit has already held that there was no invention in cutting out the corners of the blade. Gillette Safety Razor Co. v. Standard Safety Razor Corp., 2 Cir., 1935, 74 F.2d 691. The appellant here invites a reexamination of the correctness of the conclusion reached in that decision. Our consideration of the question leads us to agree with the decision of the Second Circuit.

If there is no invention in the cutting out of the blade corners is there an invention in the fact that the corners of the cap span the cut-out corners of the blade? We fail to see any. If one starts with the cap which covers completely a blade of the old Gillette type and then cuts out the corners of that blade the cap will extend over those recesses. That, in essence, meets the problem of distortion of alignment caused by external blows. We do not see how, in substance, the Swan patent does anything more.

It is admitted by the plaintiff that Swan had no idea of meeting this problem of blade distortion in his original conception. It is said on his behalf, however, that an inventor is entitled to the fruits of his invention even though his crop is more

---

[1] This application was forfeited due to the failure to file complete specifications.

valuable than he knew he was sowing; see Stow v. Chicago, 1881, 104 U.S. 547, 550, 26 L.Ed. 816; Corona Cord Tire Co. v. Dovan Corp., 1928, 276 U.S. 358, 369, 48 S.Ct. 380, 72 L.Ed. 610. Conceding this for the present, of course before this point becomes applicable, we must find invention. That we are unable to do. We think that the resolving factor in the solution of the commercial problem out of which the contentions of the parties arise is in the modification of the blade, not the other parts of the safety razor apparatus.

Our attention is also called to judicial statements to the effect that nearly every problem looks easy after it has once been solved; e. g. Expanded Metal Co. v. Bradford, 1909, 214 U.S. 366, 381, 29 S.Ct. 652, 53 L.Ed. 1034; Murray Spring Co. v. Fort Pitt, 3 Cir., 1928, 23 F.2d 599, 560; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 1935, 80 F.2d 912, 919. This proposition may also be conceded, yet it is not conclusive of the controversy here.

Furthermore, it seems to us that any invention by Mr. Swan had been pretty well anticipated by others. It is clear that the plaintiff cannot distinguish his claimed invention from earlier disclosures of the art of razor improvement shown both in drawings and physical exhibits in this litigation. Providing a safety razor with a blade whose cut-out corners are spanned by the corners of the cap is an idea which was fully anticipated. For example, the specifications and drawings of British Patent No. 206,212 of 1923 to Hayes clearly anticipate the structure here claimed. The clamping plate or cap is equipped with lugs at each corner. These lugs extend through the cut-out corners of the blade and also through the guard (making it a structure superior to Swan's for preventing torque on the blade by damaged cap corners). Appellant attempts to distinguish this patent on the ground that the lugs on the corners of the cap were provided by Hayes merely as a means of positioning the blade. But this is totally irrelevant. Appellant admits that Swan did not realize that his razor might meet the problem of damaged cap corners, but maintains that he is, nevertheless, entitled to all of the benefits and advantages of his structure. Exactly the same thing may be said of Hayes. He, too, built better than he knew. The point is that Hayes disclosed everything upon which the plaintiff relies. In his own words: "The question, accordingly, is not whether Swan realized that he had made the invention in issue, but whether the structure he devised in fact embodies it * * *. He in fact devised the structure here claimed, and he is as much entitled to protect it through his patent as if he had appreciated its full importance from the first." With the substitution of the name Hayes for Swan the language is precisely in point.

Our conclusion is therefore based on two grounds. The first is that there is no invention in the claims of the Swan patent relied upon in this litigation and the second is that if there is invention it has been completely anticipated. In reaching this conclusion we are mindful of the rule expressed in Morgan v. Daniels, 1894, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657. However, the evidence in this case convinces us that the decision of the Court of Customs and Patent Appeals in Swan v. Thompson, 80 F.2d 324 was incorrect.

The decree of the District Court is affirmed.